## BRISTOL v. BRENT (ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Garnishee).

No. 2120. Decided August 2, 1910 (110 Pac. 356).

1. EXEMPTIONS—EXTRATERRITORIAL EFFECT OF STATUTES. Exemption laws of a state have no extraterritorial effect. (Page 61.)

2. GARNISHMENT—WAIVER OF PERSONAL JURISDICTION BY GARNISHEE —EFFECT ON DEFENDANT. Waiver by a garnishee of personal jurisdiction by voluntarily appearing is not a waiver of defendant's rights in so far as jurisdiction over his property, the debt, is concerned. (Page 62.)

3. RAILROADS—FOREIGN CORPORATIONS—SERVICE OF PROCESS ON AGENT. Comp. Laws 1907, section 2948, provides that if neither the president, secretary, treasurer, or other officer of a foreign corporation, nor the person designated by it as one upon whom process may be served, is within the state, and the corporation holds itself out as having an office or place of business in the state, or does business in the state, service of process upon it may be had upon the person doing such business, or in charge of such office, or place of business. A foreign railroad corporation maintained in Utah an office in charge of a "general agent." The business conducted by the agent required an assistant, and the income therefrom amounted to about forty thousand dollars a year. The agent issued no bills of lading and sold no passage tickets, but obtained from prospective shippers "routing orders," which were signed by shippers, and by the agent sent to the respective offices of the corporation, so that the freight might be routed over its lines. *Held*, that such agent was directly connected with the business of the corporation, and process against the corporation could be served on him. (Page 69.)

4. CORPORATIONS—FOREIGN CORPORATIONS—SERVICE OF PROCESS— LEGISLATIVE CONTROL. It is within the province of the Legislature to designate the person or persons who represent a foreign corporation upon whom legal process may be served. (Page 69.)

5. GARNISHMENT—DEBTS ATTACHABLE. A debt that may be enforced in any jurisdiction by a person against his debtor may also by

a creditor of such person be attached by garnishment in any jurisdiction where the debtor of such person may be found and served with process. (Page 74.)

6. GARNISHMENT—PLEADING. Comp. Laws 1907, section 3095, requires a garnishee to answer in writing and under oath. Section 3099 provides that plaintiff may take issue on any facts stated in the garnishee's answer, but that unless he does so within ten days the answer will be deemed true. *Held*, that if a garnishee desires to make the defense that the debt, if any exists in defendant's favor, is payable at any particular place or upon special conditions by virtue of a contract between the garnishee and his creditor, the garnishee must set forth such facts in his answer, so as to give plaintiff an opportunity to take issue upon any one or more of the facts contained in the answer. (Page 74.)

7. CONSTITUTIONAL LAW—ENCROACHMENT ON LEGISLATURE. It is the duty of the Supreme Court to declare the law as it finds it. (Page 76.)

APPEAL from District Court, Third District.—*Hon. M. L. Ritchie,* Judge.

Action by G. E. Bristol against Noah Brent and the Atchison, Topeka & Santa Fe Railway Company, Garnishee.

Judgment discharging garnishee. Plaintiff appeals.

REVERSED AND REMANDED, with directions.

*E. A. Walton* for appellant.

*Goodwin & Van Pelt* for respondents.

FRICK, J.

This is the third time this case comes before this court in some form. The first time it was on the garnishee's motion to dismiss the appeal on the ground that the judgment discharging it was not a final udgment, and therefore not appealable. (*Bristol v. Brent,* 35 Utah, 213, 99 Pac. 100.) On the second appeal the garnishee contended that the court had not acquired jurisdiction of it nor of the *res*—the debt. We held that, while the court had obtained jurisdiction of

the garnishee, it had nevertheless not obtained jurisdiction of the debt due from the garnishee to the defendant in the action. (*Bristol v. Brent,* 36 Utah, 108, 103 Pac. 1076.) On this appeal the question presented is whether the debt admitted to be owing by the garnishee to the defendant in the action can be attached by the process of garnishment in view that all the parties to the action, icluding the garnishee (a foreign corporation), are nonresidents of the state, view that all the parties to the action, including the garnishee was incurred, and *prima facie* is payable, at the home of the defendant in the action, who is a resident of the state of California. The district court permitted the appellant to amend the return of service upon the garnishee (which we in the former appeal held insufficient) so as to conform to the views expressed in our former opinion. After the return was amended so as to show that service had been made in accordance with the statute of this state, the district court nevertheless entered judgment discharging the garnishee for the reason, as stated by it, "that this court has acquired no jurisdiction of the garnishee, nor over the indebtedness due from the garnishee to the defendant." The foregoing conclusion is based upon facts found by the court, which, in substance, are as follows: That neither of the parties to the action, including the garnishee, were at the commencement of the action, or at the time of the service of process, residents of the state of Utah; that the garnishee is a corporation of the state of Kansas, engaged in the business of a common carrier of both freight and passengers between Chicago, in the state of Illinois, and the state of California; that said garnishee never owned or operated any railroad in the state of Utah; that at the time service was made upon the garnishee it was indebted to the defendant in the action in the sum of $75.14, "of which the sum of $45.45, and no more, was due and payable on September 15th, the next preceding pay day, at the general offices of the company (the garnishee) at Los Angeles, Cal.; that such sum was due for services rendered by the defendant to the garnishee at Point Richmond, in the state of California." Finding No. 5 is as

follows: "That the garnishee, at the date of the service of
the garnishee summons upon C. F. Warren, kept and main-
tained at Salt Lake City, Utah, what is usually termed and
known as a 'commercial agent,' who maintained an office for
that purpose; that C. F. Warren was such commercial agent,
and John J. Devereux was his assistant; that the business
consisted in soliciting freight from merchants and in looking
after passenger business. The said agent gave no bills of
lading, or receipts, or shipping bills. Nothing was signed
or executed by him, except routing orders. The agent ob-
tained routing orders signed by the shippers and mailed such
orders to the eastern offices of the company. He issued no
passenger tickets, and did not receive any money from pro-
spective passengers. This business thus solicited amounted
to several thousand dollars per annum." The other findings
relate entirely to defendant's claim of exemption. He, how-
ever, makes this claim under the statutes of California, and
is a resident of that state, and not by virtue of any law or
statute of this state.

It is no longer an open question that the exemption laws
of a state have no extraterritorial effect, and, in the absence
of local statutes, will not ordinarily be given effect
in another state. There is nothing made to appear
in this case which would entitle the defendant to an
exemption under the laws of this state. (12 A. & E. Enc.
Law [2d Ed.], 78, 79; 18 Cyc. 1376, 1377.) The trial
court, after applying the law to the foregoing facts, arrived
at the conclusion we have before set forth, and entered judg-
ment discharging the garnishee.

Counsel for appellant most earnestly contend that the trial
court erred in its conclusions of law and in entering judg-
ment, while counsel for the garnishee, with equal earnest-
ness, insist that the court's ruling is sound, and that the judg-
ment conforms to the law applicable to the undisputed facts.
In view that it becomes important to determine whether,
under our statute, the garnishee was legally suable in this
state for the amount conceded to be owing by it to the de-
fendant, we shall first consider that question. In passing

we remark that the question just stated is important in this case only so far as it affects the rights of the defendant in view of the decisions of the Supreme Court of the United States to be noticed hereafter on another branch of the case. In so far as the rights of the garnishee are concerned, it has waived the question of personal jurisdiction by voluntarily appearing in the action; but in waiving its rights it does not and could not waive the rights of the defendant in so far as jurisdiction over his property, the debt, is concerned, and hence the question is open as to him although closed as to the garnishee. Section 2948, Comp. Laws 1907, which regulates the kind and manner of service of legal process upon foreign corporations, so far as material, reads as follows:

"The summons must be served by delivering a copy thereof as follows: . . . If the defendant is a foreign corporation, or non-resident joint-stock company or association, to the president, secretary, treasurer, or other officer thereof, or to the person designated by such corporation, company, or association, as one upon whom process may be served. If no such person can be found, then upon any clerk, superintendent, general agent, cashier, principal director, ticket agent, station keeper, managing agent, or other agent having the management, direction, or control of any property, of such corporation, company, or association. If none of the persons named in this subdivision can be found in the county in which such action is commenced then service may be made as provided herein upon any such persons in any county of this state. If there be none of such persons in the state of Utah, and the defendant has, or advertises, or holds itself out as having an office or place of business in this state, or does business in the state, then upon the person doing such business or in charge of such office or place of business."

In view of the foregoing provisions, and of the facts as found in finding No. 5, *supra,* and the other facts before stated, was the garnishee a foreign corporation suable in the courts of this state, and could jurisdiction be acquired over it without its consent so as to reach and condemn the debt owing by it to the defendant? The district court held that the garnishee was not doing business in this state, that it was not represented in its corporate capacity by the so-called

"commercial agent," and hence was not suable in the courts of this state without its consent. From this the court arrived at the conclusion we have before stated. In arriving at such conclusion, the court no doubt followed the rule laid down in *Green v. Chicago, B. & Q. Ry. Co.*, 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916; *Rich v. Chicago, B. & Q. Ry.*, 34 Wash. 14, 74 Pac. 1008; *Berger v. Pennsylvania Ry. Co.*, 27 R. I. 583, 65 Atl. 261, 9 L. R. A. (N. S.) 1214, and similar cases, which, in view that the foregoing cases are typical upon the question, need no special reference here. In the case of *Green v. Chicago, B. & Q. Ry. Co.*, supra, the facts were very similar to the facts in the case at bar, and upon those facts it was held by both the Supreme and the District Courts of the United States that the defendant in that case was not doing business in the Eastern district of Pennsylvania within the purview of the federal statute then under consideration. Mr. Justice Moody, in speaking for the Supreme Court of the United States, pointed out, however, that the decision is based upon the federal statute, and that the cases in which a contra conclusion was reached involved "the interpretation of a state statute and the jurisdiction of the state courts." We refer to this statement only to show that the Supreme Court of the United States, as well as many other courts that have had occasion to pass upon the question, have always based their decisions, to a large extent at least, upon the terms of the particular statute in question. The service of process in the case of *Rich v. Chicago, B. & Q. Ry.*, supra, was made under a statute the material part of which is as follows: " . . . If the suit be against a foreign corporation or nonresident joint-stock company or association doing business within this state, to any agent, cashier, or secretary thereof. . . ." The statute was in similar terms both in the Green and in the Berger Cases, supra; and such is also true of about all of the cases in which it has been held that the mere solicitation of freight and passenger business through what is called a "commercial agent" does not constitute the doing of business within the provisions of such statutes.

It seems to us that some of the courts have been impressed too much with the rule existing at common law, namely, that a corporation cannot migrate and hence is to be served with legal process only at the place where it was created, and hence these courts have placed rather a strict construction upon statutes by which the power to serve legal process on foreign corporations is given. It is self-evident that a corporation can act and be acted upon only through its agents. If thus notice of any kind or character is to be brought home to the corporation, it must be done by notifying one of its accredited agents. The character of such agent and the manner of making service of legal process upon a foreign corporation must, to a large extent at least, be left to the sound discretion of the legislative power. So long as notice to corporations amounts to due process of law, the mere manner of service or the agent upon whom service is made is not of controlling importance. The only legal question really involved is whether the agent upon whom service is made is one who is directly connected with the corporate affairs, or is conducting some of the corporate business of the corporation, so that through him the corporation is legally represented. If such be the case, we cannot see that the nature or the amount of business that an agent transacts in the foreign state is of great importance. It is true, as counsel for the garnishee contend, that the Supreme Court of the United States has repeatedly held that, in order to give the court of one state jurisdiction over a corporation of another state without its consent, the corporation must be doing business in the state where legal process is served upon its agent, and that such agent must be one who is "there representing the corporation in its business." The doctrine is learnedly discussed by Mr. Justice Field in his usual luminous style in the case of *St. Clair v. Cox,* 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222. That case has frequently been referred to and followed by the same court in other cases, among which are the following: *Goldey v. Morning News,* 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; *Conley v. Mathiesen Alkali Works,* 190 U. S. 406, 23 Sup.

Ct. 728, 47 L. Ed. 1113; *Peterson v. C., R. I. & P. Ry.,* 205 U. S. 364-394, 27 Sup. Ct. 513, 51 L. Ed. 841; *Mutual Life Ins. Co. v. Spratley,* 177 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; *Coml. Mut. Accident Co. v. Davis,* 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 782. Other courts have also adopted the same rule as appears from the following, among other numerous cases that might be cited: *Earle v. Chesapeake Ry. Co.* (C. C.), 127 Fed. 235; *Camden Rolling Mill Co. v. Swede Iron Co.,* 32 N. J. Law 15; *Zelnicker Supply Co. v. Cotton Oil Co.,* 103 Mo. App. 94, 77 S. W. 321. See, also, notes to *Pinney v. Providence Loan & Inv. Co.,* 50 L. R. A. 589-594; *Reeves v. Southern R. Co.,* 70 L. R. A. 523-534, and *Foster v. Lumber Co.,* 23 L. R. A. 496.

In none of the foregoing cases, or in any other that we have seen, is the extent of the business that must be done by the foreign corporation in the foreign state to make it suable there under a statute like ours defined. Indeed, in the latest case where this question is considered by the Supreme Court of the United States, namely, *Coml. Mut. Accident Co. v. Davis,* 213 U. S., at page 256, 29 Sup. Ct., at page 448 (53 L. Ed. 782), decided in 1909, that court, in speaking through Mr. Justice Day, in referring to the extent of business required to be done, says: "Previous cases in this court have not defined the extent of the business necessary to the presence of a foreign corporation in a state for the purpose of a valid service; it is sufficient if it is doing business there." The question touching the extent of the business that is necessary to bring the corporation within the foreign state so as to be amenable to service of legal process there is again left open in the case, as it was in the others. All that the Supreme Court of the United States, which is the court of last resort upon this question, has done, so far, is to say that under certain facts when applied to particular state or federal statutes the courts did or did not acquire jurisdiction over a foreign corporation.

In our judgment the case to which we have been referred by counsel, and to which we have herein referred, are not

decisive of the question as the same arises in the case at bar. It seems to us, however, that, if any case is decisive upon the facts when applied to our statute, it is the case of *Denver & R. G. Ry. Co. v. Roller*, 41 C. C. A. 22, 100 Fed. 738. The facts in that case are so nearly identical with the facts in the case at bar that there can be no distinction between that case and this upon the question of whether the corporation was or was not doing business within the purview of the statute there in question. In that case service was made in California under a statute somewhat more restricted in its terms than ours. It was made upon an agent of a foreign railway company who represented the company precisely as the agent in this action represented the garnishee, namely, by maintaining an office in the state of California and by soliciting business of precisely the same character and in the same manner as the agent of the garnishee did in this state. Under those facts it was held in that case that the railroad company, a foreign corporation, could be legally served with process by delivering a copy thereof to the agent who represented it as aforesaid. All that is said in that case upon the question whether the corporation was represented in its business in the state of California is applicable to the facts in this case, and, without quoting what is there said, we refer the reader to that case. That case was decided a long time prior to the case of *Green v. Chicago, B. & Q. Ry.*, *supra*. Indeed, in the latter case Mr. Justice Moody expressly referred to the case of *Denver & R. G. Co. v. Roller*, *supra*, and distinguished it from the Green Case because the former involved the construction of a state statute and the question of jurisdiction of a state court over a foreign corporation. Moreover, one of the justices who sat in the *Denver & R. G. R. Co. v. Roller Case*, Mr. McKenna, afterwards was appointed one of the justices of the Supreme Court of the United States, and was such when the Green Case was decided by that court in 1907. The latest case upon this question, as we have seen, is the one referred to in 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 782, and in that case the decision in *Denver & R. G. R. Co. v. Roller* stands un-

affected. It is manifest that the Supreme Court of the United States, although thoroughly aware of the rule laid down in the Roller Case, has at no time either questioned or modified it.

We therefore are not only justified in assuming, but are in a measure forced to the conclusion, that the rule as promulgated in the Roller Case is the one that prevails in the Supreme Court of the United States, where the question arose in a state court upon a statute similar in terms to our own. Under our statute a foreign corporation may likewise be served with legal process within this state if it "has or advertises, or holds itself out as having an office or place of business in this state." In such case service may be made upon the person who is "in charge of said office or place of business." If the corporation, therefore, maintains an office in this state and places it in charge of a person whom it publicly announces to be its agent, or general agent, and if through him it solicits freight and passenger business, why is the corporation not represented by such an agent? True, such an agent may not have the power to bind the corporation in all of its business affairs, but is it necessary that an agent, in order to make a valid service of legal process upon him under a particular statute, be such as represents the corporation in all of its business affairs, or one who has power to bind it with respect to any and every matter that comes within the object for which the corporation was created? Under modern methods of carrying on corporation business, such an agent would be hard to find indeed. If the person who is designated as agent is in fact the representative of the corporation, we cannot see how it is of controlling importance to what extent or in what particular manner the agent represents the company, provided the statute authorizes service upon such a person or agent. In this case the garnishee, with full knowledge of the terms of our statute, procured, and has for sixteen years maintained, an office in this state and has placed Mr. Warren in charge thereof as its "general agent." The evidence shows that the business conducted by Mr. Warren in Utah required an assistant, and

that the income therefrom, according to the testimony of
such assistant, amounts to about forty thousand dollars a
year. While it is contended that Mr. Warren as the agent
issued no bills of lading nor sold passage tickets, he never-
theless obtained from prospective shippers what are termed
"routing orders," which were signed by shippers and by the
agent sent to the respective offices of the garnishee, so that
the freight might be routed over its railroad lines. If it
were contended that any one who was engaged in soliciting
freight and passenger business for a railroad company in a
state where it operated its line of railroad was nevertheless
not connected with the business of such company, no one
would consider the contention seriously.

It goes without saying that to transport freight and pas-
sengers is the very purpose for which a railroad company is
created and conducted. If there be sharp competition in
the business, as there usually is at what are termed railroad
centers, the railroad companies, in order to obtain their
proportionate share of the business, must place solicitors in
the field. Why is such a solicitor not directly connected with
the business of the company just as much as the agent of
the company who receives the freight from the person who,
pursuant to the request of the solicitor, delivers it to the
agent for shipment or transportation? The difference, if
any, is one of degree rather than of kind. No one can read
our statute and not be forced to the conclusion that it was
the intention of the legislature to reach with legal process
all corporations who are conducting business in this state
through agents as the garnishee was doing when its agent was
served with process in this case. As suggested, we think
that, within the limits referred to in this opinion, it is within
the province of the legislature to designate the person or
persons who represent the corporation upon whom legal pro-
cess may be served. The doctrine is well stated by Mr. Chief
Justice Sherwood in the case of *McNichol v. U. S., etc.,
Agency,* 74 Mo., at page 475, in the following words: "Nor
is it any inherent, fundamental quality in the corporation
that process against it should be served upon its principal

officer. It is a mere matter of municipal law that the state may change at pleasure." This doctrine is approved by the United States Supreme Court in the case of *New York, etc., Co. v. Estill,* 147 U. S. 607, 13 Sup. Ct. 444, 37 L. Ed. 292, and by the Court of Appeals of New York in the case of *Hiller v. R. & M. R. Co.,* 70 N. Y. 227. We are clearly of the opinion that under the provisions of our statute the garnishee was present in the state of Utah and was subject to service of legal process so as to confer jurisdiction of our courts over it.

In concluding this branch of the case, we remark that the legislative policy of permitting all without restriction, to make the courts of this state the medium through which to settle their legal controversies, may perhaps not be the wisest that could be adopted. We are, however, only concerned with the questions whether the legislature has the power to authorize the service of legal process, whether such power has been conferred by it, and, if so, whether it has been legally exercised. In this case none of the foregoing questions are, in our judgment, open to reasonable doubt.

Notwithstanding the fact, however, that the garnishee may have been suable in this state, counsel nevertheless insist that in view that all the parties, including the garnishee, are nonresidents of the state; that the jurisdiction of the court depends upon the attachment of a debt owing by the garnishee to the defendant in the action; that the debt was neither incurred nor payable in this state—therefore the court acquired no jurisdiction over the debt or money owing by the garnishee to the defendant. The question with regard to when, how, and under what circumstances, money owing by one person to another may be attached by process of garnishment either with or without personal service upon the creditor, or whether before or after judgment, in jurisdictions other than that of debtor and creditor, or of either of them, the authorities are in hopeless conflict. There has been a vast amount of learned discussion upon the subject by the different courts, both state and federal. We shall

not attempt either to review or cite the great mass of cases that in some form or other have discussed or passed upon the question. We shall cite a few leading cases only from which the views of the different courts may be gleaned quite as well as they could be from a much larger number. Among the cases which maintain the doctrine that for the purpose of attachment by garnishment a debt or obligation has a situs, and that such situs is at the domicile of the creditor and not at that of the debtor, and hence the debt must be attached, if attached at all, in the state of the domicile of the creditor, are the following: *Louisville & N. Ry. v. Nash,* 118 Ala. 477, 23 South. 825, 41 L. R. A. 331, 72 Am. St. Rep. 181; *Reimers v. Seatco Mfg. Co.,* 70 Fed. 573, 17 C. C. A. 228, 30 L. R. A. 364; *Central Georgia Ry. v. Brinson,* 109 Ga. 354, 34 S. E. 597, 77 Am. St. Rep. 382; *American Central Ins. Co. v. Hettler,* 37 Neb. 849, 56 N. W. 711, 40 Am. St. Rep. 522; *McKinney v. Mills,* 80 Minn. 478, 83 N. W. 452, 81 Am. St. Rep. 278.

Upon the other hand, among the cases which hold that for the purposes of attachment by process of garnishment a debt has no situs, and that it may be attached wherever the debtor may be found and where the creditor could sue and enforce his claim, are the following: *Chicago, R. I. & P. Ry. v. Sturm,* 174 U. S. 710, 17 Sup. Ct. 797, 43 L. Ed. 1144; *Baltimore & O. R. v. Allen,* 58 W. Va. 388, 52 S. E. 465, 3 L. R. A. (N. S.) 608, 112 Am. St. Rep. 975; *Morgan v. Neville,* 74 Pa. 52; *Wyeth Hardware Co. v. Lang,* 127 Mo. 242-247, 29 S. W. 1010, 27 L. R. A. 651, 48 Am. St. Rep. 626; *Harris v. Balk,* 198 U. S. 215, 25 Sup. Ct. 625, 49 L. Ed. 1023.

Many of the decisions coming within the class of cases first cited are also in part based upon the theory that unless the debt was owing to the creditor in the state where the action was commenced, in which the writ of attachment or garnishment was issued and served, the court could not acquire jurisdiction to condemn the debt in the hands of the garnishee, and the garnishee would not therefore be protected by the judgment under the full faith and credit clause of the Federal

Constitution, but would have to pay his creditor again if sued in the state of the domicile of the creditor. The Supreme Court of the United States is, however, the final authority upon that question, and since the decision of *Harris v. Balk, supra,* the question is no longer open for discussion. The law upon that subject, as laid down by the Supreme Court of the United States, in substance, is that a debt due a person may be attached by the creditor of that person by the process of garnishment in any jurisdiction where such person could sue and enforce his claim against the person who is indebted to him and is made garnishee, provided service of legal process can be made upon the garnishee. If this can be done, the court acquires jurisdiction of both the debt and the garnishee, and the judgment condemning the debt in the hands of the garnishee, and subjecting the same to the payment of the plaintiff's claim, is binding on the defendant whose money is condemned as aforesaid, under the full faith and credit clause of the Federal Constitution, and hence the garnishee is protected against a further action to the extent that he has been required to pay by virtue of the judgment obtained against him. Under this doctrine it necessarily follows that the debt for the purposes of attachment by garnishment process has no situs. While such a conclusion is directly contrary to the predilections of the writer, yet I must concede that both reason and logic fully sustain the Supreme Court of the United States in this conclusion.

Mr. Justice Peckham, in referring to whether a debt has a situs for the purposes of attachment, and the power of the court to condemn the debts in the hands of the debtor, in *Harris v. Balk, supra,* says:

"If there be a law of the state providing for the attachment of the debt, then if the garnishee be found in that state, and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff and condemn it, provided the garnishee himself could be sued by his creditor in that state. We do not see how the question of jurisdiction *vel non* can properly be made to depend upon the so-called original situs of the debt, or

upon the character of the stay of the garnishee, whether temporary or permanent, in the state where the attachment is issued. Power over the person of the garnishee confers jurisdiction on the courts of the state where the writ issues. (*Blackstone v. Miller*, 188 U. S. 189, 206 [23 Sup. Ct. 277, 47 L. Ed. 439.]) If, while temporarily there, his creditor might sue him there and recover the debt, then he is liable to process of garnishment, no matter where the situs of the debt was originally. We do not see the materiality of the expression 'situs of the debt,' when used in connection with attachment proceedings. If by situs it meant the place of the creation of the debt, that fact is immaterial. If it be meant that the obligation to pay the debt can only be enforced at the situs thus fixed, we think it plainly untrue. The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes. He is as much bound to pay his debt in a foreign state when therein sued upon his obligation by his creditor, as he was in the state where the debt was contracted. We speak of ordinary debts, such as the one in this case. It would be no defense to such suit for the debtor to plead that he was only in the foreign state casually or temporarily. His obligation to pay would be the same whether he was there in that way or with an intention to remain. It is nothing but the obligation to pay which is garnisheed or attached. This obligation can be enforced by the courts of the foreign state after personal service of process therein, just as well as by the courts of the domicile of the debtor. If the debtor leave the foreign state without appearing, a judgment by default may be entered, upon which execution may issue, or the judgment may be sued upon in any other state where the debtor might be found. In such case the situs is unimportant. It is not a question of possession in the foreign state, for possession cannot be taken of a debt or of the obligation to pay it, as tangible property might be taken possession of. Notice to the debtor (garnishee) of the commencement of the suit, and notice not to pay to his creditor, is all that can be given, whether the garnishee be a mere casual and temporary comer, or a resident of the state where the attachment is laid. His obligation to pay to his creditor is thereby arrested and a lien created upon the debt itself. (*Cahoon v. Morgan*, 38 Vt. 234, 236; *National Fire Ins. Co. v. Chambers*, 53 N. J. Eq. 468, 483 [32 Atl. 663.]) We can see no reason why the attachment could not be thus laid, provided the creditor of the garnishee could himself sue in that state and its laws permitted the attachment."

The court also adopts the following statement of the law from Parsons on Contracts, namely: "All debts are payable everywhere, unless there be some special limitation or provision in respect to the payment; the rule being that debts as such have no locus or situs, but accompany the creditor everywhere, and authorize a demand upon the debtor every-

where." The debt in that case being payable generally, it was accordingly held subject to garnishment wherever the debtor could be served with process. See, also, *Lumberman's Ins. Co. v. Meyer,* 197 U. S. 416, 25 Sup. Ct. 483, 49 L. Ed. 810.

If the foregoing statement of the law is sound (and to our minds it is without a flaw), it necessarily follows that in attaching a debt by the process of garnishment nothing is sought nor accomplished except to establish a lien, and to prevent the debtor from discharging his obligation to pay the debt directly to his creditor, and to require the debtor to hold it and to pay it as directed by the court for the purpose of applying it in discharge of a debt due from the defendant to the plaintiff in the action. The only inquiries directed to the garnishee, and which he is required to answer, are whether he is indebted to the defendant, when does this obligation to pay mature, and what is the amount of the indebtedness? No doubt, if the obligation to pay has not matured, and the debt is made payable by contract at a particular place and under special conditions, the garnishee ought to disclose that fact when he is called upon to answer. The United States Supreme Court, to our minds, makes it quite clear that a debt can only be condemned in the hands of the garnishee in a jurisdiction where the creditor of such garnishee could himself enforce payment of such debt against the garnishee. This is logical, for the reason that if nothing tangible is attached by the process of garnishment, and nothing is arrested except the obligation to pay the debt by the garnishee, it must follow that a court may not disregard the conditions upon which the obligation to pay rests, and may not enforce it against the garnishee unless the garnishee's creditor could enforce it at the time when, and at the place where, the action is commenced against the creditor of the garnishee.

In 6 Thompson on Corp., sec. 8073, the author, in referring to the subject now under consideration, says: "When the nature of the proceedings by garnishment is considered, the crucial test by which to determine this question (the right

to attach a debt) must be whether the defendant in the attachment or execution could, at the time of the service of the notice of garnishment, have 'maintained an action at law against the corporation' in the forum from which the garnishment issued, to recover the debt." Mr. Thompson ventures the opinion that the conflicting views of the courts may perhaps be reconciled, if reconcilable at all, upon the doctrine announced in the foregoing quotation.

A debt, therefore, that may be enforced in any jurisdiction by a person against his debtor, may also by a creditor of such person be attached by process of garnishment in any jurisdiction where the debtor of such person may be found and served with legal process.

The only question that remains, therefore, is: Could the debt or obligation to pay which is involved in this case have been enforced by the defendant against the garnishee in Salt Lake County, where the writ of garnishment was served on the garnishee in this case? It should be remembered that under our statute (section 3095, Comp. Laws 1907) the garnishee is required to answer in writing and under oath. By the provisions of section 3099, the plaintiff in the action may take issue on any fact stated in the garnishee's answer; but unless he does so within ten days the answer of the garnishee will be deemed to be true. We are of the opinion that if the garnishee desires to make the defense that the debt or obligation, if any exists in favor of the defendant, is payable at any particular place, or upon special conditions by virtue of a contract entered into between the garnishee and his creditor, the garnishee should set forth the facts in his answer so as to give the plaintiff an opportunity to take issue upon any one or more of the facts contained in the answer in his reply as provided in section 3099, *supra*. The garnishee, being a party to such an agreement, if one exists, in order to protect the defendant in the action as well as himself, should set forth the contract or its legal effect in his answer, and thus let the court pass upon it, and, further, give the plaintiff an opportunity either to deny its existence or to contest its legal effect. There is nothing in

the answer of the garnishee in this case from which it is made to appear that its obligation to pay the defendant could not have been enforced anywhere. True, the district court has, in a general way, found that the amount due to the defendant from the garnishee was "payable . . . at the general offices of the company at Los Angeles, Cal." As already stated, there is nothing to that effect in the answer of the garnishee, nor is there any evidence (even if such evidence were conceded to be admissible in the absence of anything to that effect in the answer) to support such finding. The court evidently based the finding upon the inference deduced from the facts that the defendant was employed in California by the garnishee; that he lived in and earned the money there; and that, *prima facie* at least, the money was payable there. All this may be conceded, and still the question remains whether or not the defendant could have demanded payment from the garnishee in this state, and, if payment were refused, whether he could have sued and recovered judgment for the amount due him against the garnishee in the courts of this state. We have already held that legal process could have been served on the garnishee in this state, and that it was therefore suable here.

There is no finding, nor is there any evidence, that there existed any special contract with respect of payment, which prevented the defendant from suing and recovering judgment for the wages due him against the garnishee in this state. This being so, the test laid down by the Supreme Court of the United States applies to this case, namely, inasmuch as the defendant could have sued the garnishee in this state for the amount due him from it, therefore the plaintiff may also sue the garnishee and recover from it the amount found due from it to the defendant. The finding therefore is entirely insufficient to prevent a recovery by the plaintiff against the garnishee in case that it be found that he is entitled to judgment against the defendant.

In view of the conclusion reached by us, all of the other points raised by the appellant become immaterial, and we therefore do not deem it necessary to consider them specially.

In view of what has been said, we are forced to the conclusion that the court erred in entering judgment discharging the garnishee.

In concluding this opinon, we feel constrained to add that it has been suggested that, even though it be conceded that the rule laid down by the United States Supreme Court conforms to good reason and sound logic, yet, if the rule be rigidly enforced, it may, under certain circumstances, result in inflicting great injustice upon a certain class of debtors. In this connection it is suggested that, in view of the immense interstate traffic which is carried on by our great railway systems through their vast army of employees, a few enterprising collectors, if located at favorable points within the United States, may, by the process of garnishment, attach the wages of a vast number of employees at points so far distant from their homes, and under circumstances which will prevent such employees from making any defense, although they may have a complete defense to the action. It is also contended that at all events it will, in almost every instance, prevent the heads of families who live in other states from successfully claiming their exemptions under local exemption laws. If it be conceded, however, that all that is claimed is true, and if it be further conceded that the law with respect to these matters can and should be changed, yet both the power and the duty to make changes in the law is with the legislature and not with the courts. It is the duty of this court to declare the law as it finds it. While under our Constitution we may call attention to seeming defects in the law, we are, nevertheless, powerless to cure such defects. The matter of attachment and garnishment is purely statutory, and the regulation thereof is entirely within the power of the legislative, and not the judicial, branch of the state government. If the law upon those subjects be such that injustice may result to a certain class of debtors, the legislature, and not the courts, should change the law so as to prevent wrongs of that character.

After filing the foregoing opinion, counsel for the gar-

nishee, who now also represent the defendant, filed an application for a rehearing, in which they vigorously insist that that portion of the opinion in which we held that the garnishee was under our statute amenable to service of legal process within this state is contrary to the decisions of the Supreme Court of the United States, and hence erroneous. In deference to counsel's request, and in the light of the able argument presented by them in support of their petition for a rehearing, we have re-examined the authorities and have given the subject further consideration. After doing so, in order to avoid any misunderstanding respecting the basis of the conclusion reached by us, we have in some respects changed the phraseology of the opinion as originally filed. In view of such changes, we now substitute the present opinion as the opinion in the case, and, in order to avoid confusion and the publication of duplicate opinions, we direct that this opinion, and not the former one, be published in the official reports. We desire to add further that in view that this case has been before us three times, and that counsel have availed themselves of the opportunity and have thoroughly briefed and argued all the questions decided, we deem it wholly unnecessary to grant a rehearing as requested by them, although for the reason suggested we have deemed it proper to make some changes in the phraseology of the opinion as originally filed. The application for a rehearing is therefore denied. If there is anything in the opinion just filed which counsel for either party think they have not covered either in their original argument or in the argument submitted in support of and against the application for a rehearing, they may file a suplemental application for a rehearing upon such point or points.

The judgment of the district court is therefore reversed, and the cause is remanded to that court, with directions to vacate and set aside its order discharging the garnishee, and it is further directed to proceed against the garnishee as provided in sections 3096 and 3097, Comp. Laws 1907. Appellant to recover costs.

STRAUP, C. J., and McCARTY, J., concur.