## WABASH R. CO. v. DISTRICT COURT OF THIRD JUDICIAL DIST. IN AND FOR SALT LAKE COUNTY et al.

No. 6859.   Decided April 4, 1946.   (167 P. 2d 973.)

See 20 C. J. S., Corporations, sec. 1906; 23 Am. Jur., 380. Foreign railway corporation as subject to service of process in state in which it merely solicits interstate business, note, 46 A. L. R., 570, sec. 95, A. L. R. 1480.

*Robert B. Porter, Jr.,* of Salt Lake City, for plaintiff.

*Harry D. Pugsley,* of Salt Lake City, for defendants.

McDONOUGH, Justice.

On application of plaintiff, we issued an alternative writ of prohibition to restrain the district court of Salt Lake County from proceeding any further in an action against plaintiff which was instituted by Northwestern Turkey Growers Association. The defendant in that action (plaintiff here) made a special appearance for the purpose of moving to quash service of summons, on the ground that the railroad company is a foreign corporation which is not engaged in business in Utah and therefore not present in Utah for purposes of being subject to service of process, and that said district court is without jurisdiction over the railroad company. In seeking to make the writ permanent, plaintiff makes two contentions: (1) That its activities in Utah do not constitute the doing of business in Utah so as to subject it to service of process in this state; and (2) that it would constitute an undue burden upon interstate

commerce to compel plaintiff to defend the action in question in Utah.

A stipulation of facts shows the following: Plaintiff here is an Ohio railroad corporation. It has no tracks west of the Missouri river. The railroad company maintains an office at Salt Lake City for the convenience of its "general agent," an assistant and a clerk. The duties of the general agent and these assistants consist of solicitation of freight for routing over the Wabash Railroad, and the promotion of good will. On behalf of the railroad these employees solicit shipments of freight in Utah and in three other neighboring states for transportation of commodities originating in said states, over the Wabash line. These agents also request shippers, including Northwestern Turkey Growers Association, to give the Wabash Railroad Company consideration in routing freight. They also ask merchants in Utah to write to their shippers at the time of ordering merchandise to route freight by way of the Wabash Railroad.

The agents in Utah sell no tickets, execute no documents on behalf of the railroad, issue no bills of lading, no receipts for freight, and collect no money. From the freight routings so solicited, there is a gross annual revenue of about $225,-000, which is divided among the railroads participating in the hauls. That part of the transportation of freight which is handled by the plaintiff railroad, occurs entirely outside of Utah. The loss on which the shipper (Northwestern Turkey Growers Association) bases its claim occurred east of Chicago and allegedly on the line of the Wabash Railroad. The shipment of freight which is the subject of the claim in the suit sought to be permanently restrained, commenced in Nebraska and went east, and did not at any time traverse any part of the state of Utah.

While the claim of the Northwestern Turkey Growers Association arose out of a transaction which began in Nebraska as far as the point of origin of the shipment is concerned, the Association is a Utah corporation, and it was domiciled in Utah at the time of the shipment in question

out of which the cause of action arose.

Plaintiff corporation is not licensed to do business in Utah as a foreign corporation. Its only property in this state consists of office furniture and equipment, books and records, and claims against the Union Pacific Railroad Company for interline settlements on charges received for transportation of goods and passengers in interstate commerce. Such interline settlements are not made in Utah, nor by the traffic solicitors who office in Utah. Plaintiff's office is listed in the Salt Lake City telephone directory.

In addition to the solicitation of freight for transportation over the Wabash lines, the agents of the railroad here act as intermediaries for the railroad in handling claims for losses incurred by Utah shippers on the lines of plaintiff. These agents have no authority to make settlements, but they aid in facilitation of the presentation of such claims of Utah shippers in order to provide prompt and fair consideration, and they transmit such claims to the proper officials for disposition.

It seems to be conceded that it would be substantially as expensive for the Association to bring its witnesses into some eastern state for trial as it would be for the railroad to transport its witnesses to Utah for trial.

We direct attention to the first contention, that the activities of the railroad do not constitute the doing of business in Utah so as to subject the railroad to service of process in Utah. This case obviously differs from one in which the state seeks to exact a franchise tax for the privilege of doing business. The question here is whether the railroad company is present in Utah so as to be amenable to service of process. A corporation can only act through its agents and employees. The fact that an officer of a foreign corporation is present within a state, does not in and of itself make the foreign corporation present within the state. In order to bring the corporation into another state, the officers or agents of such corporation must be performing the business or functions of the corporation in such state. Both parties seem to recognize this factor in

their briefs, for the railroad claims that its activities in Utah do not constitute the "doing of business within the state," while the Association contends that the activities set forth in the stipulation of facts clearly amount to transaction of business in Utah so as to make the railroad company sufficiently present within the state to be subject to service of summons.

Our statute which provides the manner in which summons shall be served upon a foreign corporation, does not specify that the corporation must be conducting specified activities in order to be subject to service of process, nor what particular activities bring a foreign corporation into the state. Sec. 104-5-11, U. C. A. 1943, provides, inter alia, that summons must be served by delivering a copy as follows:

"* * * If the defendant is a foreign corporation * * * to the president, secretary, treasurer or other officer thereof, or to the person designated by such corporation, company or association as one upon whom process may be served. If no such person can be found within the state, then upon any clerk, superintendent, general agent, cashier, principal director, ticket agent, station keeper, managing agent or other agent having the management, direction or control of any property of such corporation, company or association. * * * If there is none of such persons in this state, and the defendant has, or advertises or holds itself out as having, an office or place of business in this state, or does business in the state, then upon the person doing such business or in charge of such office or place of business."

If the railroad company conducts activities which make the foreign corporation present within the state, so that service of process can be effectuated, the service made in the instant case was in compliance with such statute.

The first case decided in this state affecting a foreign railroad corporation on which service of process was attempted on a "general agent" was Bristol v. Brent, 38 Utah 58, 110 P. 356. The Atchison, Topeka & Santa Fe Railroad Company was served with a writ of garnishment. It had no railroad lines in this state. It likewise transported no passengers nor freight in or through this state. In that case it was

contended that solicitation of such business for transportation on its lines outside the state, amounted to the transaction of sufficient business activities in this state to subject it to service of process. In response to the argument that the general agent merely solicited freight and passenger business to be routed over its lines in other states, this court posed the following questions:

"If the corporation, therefore, maintains an office in this state and places it in charge of a person whom it publicly announces to be its agent, or general agent, and if through him it solicits freight and passenger business, why is the corporation not represented by such agent? True, such an agent may not have the power to bind the corporation in all of its business affairs, but is it necessary that an agent, in order to make a valid service of legal process upon him under a particular statute, be such as represents the corporation in all of its business affairs, or one who has power to bind it with respect to any any every matter that comes within the object for which the corporation was created?"

In answering the questions thus posed, the court said:

"Under modern methods of carrying on corporation business, such an agent would be hard to find indeed."

It was pointed out that transportation of freight and passengers is the very purpose for which a railroad is created and operated, and that solicitation is the means for getting such business, and constitutes a business activity. In overruling the contention that "solicitation of freight for routing over the lines of the railroad in some distant state" does not amount to doing corporate business, Mr. Justice Frick said:

"If it were contended that any one who was engaged in soliciting freight and passenger business for a railroad company in a state where it operated its line of railroad was nevertheless not connected with the business of such company, no one would consider the contention seriously."

As pointed out in *Bristol* v. *Brent,* supra, a number of the federal cases there discussed were based upon federal

rules and statutes which related to the district in which an action might be instituted in a federal court. *Bristol* v. *Brent*, supra, was cited with approval in *Industrial Comm.* v. *Kemmerer Coal Co.*, 106 Utah 476, 150 P. 2d 373. This case arose on writ of mandate to compel defendant corporation to comply with the statutes of this state relating to transaction of business, and the contention was made that defendant, a Wyoming corporation, was not doing business in Utah by merely having a sales force to solicit orders for coal to be shipped into Utah, when such orders were subject to acceptance at the principal office of the corporation in Wyoming. We quoted from *Frene* v. *Louisville Cement Co.*, 77 U. S. App. D. C. 129, 134 F. 2d 511, 514, 515, 146 A. L. R. 926, as to what constitutes doing business in a state so as to render a foreign corporation amenable to service of process, italicizing the phrase, "And very little more than 'mere solicitation' is required to bring about this result."

In the concurring opinion of Mr. Justice Rutledge in *International Harvester Co.* v. *Dept. of Treasury*, 322 U. S. 340, 354, 64 S. Ct. 1019, 1030, 1031, 1033, 88 L. Ed. 1313, (wherein the validity of certain state taxes was involved), it is declared that

"That old notion that 'mere solicitation' is not 'doing business' when it is regular, continuous and persistent is fast losing its force."

There can be no doubt in this case under the stipulation of facts that the solicitation of business by the railroad company in question is regular, continuing and persistent. The solicitation of freight and passenger service for routing over the Wabash lines results in business amounting to a quarter of a million dollars annually.

The stipulation of facts shows that these agents of the railroad company not only solicit freight, but they also "facilitate the handling of claims" for losses to shippers. The "facilitation of claims" in common parlance means that when a shipper suffers a loss he contacts the local agents, giving the details of his claim and making a presentation

of some claim, which the local agents investigate in a preliminary way, and then forward to the claim agent of the railroad in some other state. The fact that these local agents have no authority to consummate settlement nor to make contracts to adjust losses, does not take their activities out of the category of business activities. Solicitation of business not only results in getting business, but the business so solicited results in some cases in loss to shippers, because of accidents in transit and other conditions beyond the control of the shippers. The submission and facilitation of claims for losses is a necessary business activity of a carrier, and it is something more and in addition to the solicitation of freight routings. The solicitation must be successful and result in business, and the carrier must have undertaken the haul or transportation before the loss in transit could occur. The handling of claims is something in addition to solicitation. It would seem that the railroad company recognizes the necessity of having local agents "facilitate claims for losses," in addition to the mere solicitation of freight and passenger routings. If "very little more than mere solicitation of business" is required to bring a foreign corporation into the state for purposes of having it present so as to be amenable to service of process, the activities of the local agents in receiving claims for losses arising out of the business solicited and the "facilitation of claims" would seem to be sufficient business activity to meet such requirement.

We are of the opinion, and so hold, that plaintiff corporation was, under the facts here stipulated, so present in this state as to subject it to service of summons and that due process has been accorded it in this respect. We see no reason for overruling *Bristol* v. *Brent,* supra, or *Industrial Comm.* v. *Kemmerer Coal Co.,* supra, on this phase of the case.

The second contention of plaintiff is that to require a foreign railroad corporation to defend an action in a state where it does not operate as a carrier, where it has no

railroad lines, would constitute an undue burden upon interstate commerce.

Inasmuch as the Association as plaintiff in the suit under attack, has always been domiciled in Utah, and was so domiciled at the time the cause of action arose, this case is not necessarily governed by those cases in which the plaintiff resided in the state where the cause of action arose and moved into some other state where suit was instituted. Since plaintiff railroad relies on *Davis* v. *Farmers' Co-op. Equity Co.*, 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996, it should be noted: (1) That the plaintiff in that case did not reside in the state of Minnesota where the action was instituted; (2) that the plaintiff was a corporation of the same state (Kansas) in which the defendant was domiciled; (3) that the recovery sought was for a loss of goods shipped under a bill of lading issued by the carrier in Kansas for transportation over its line from one point in that state to another; and (4) that the transaction was in no way connected with Minnesota or with the soliciting agency located there. The United States Supreme Court held that the Minnesota statute, construed by the Minnesota court as compelling every foreign carrier to submit to suit in Minnesota as a condition to the mere maintenance of a soliciting agent there, was obnoxious to the commerce clause. In the course of its opinion, the court observed:

"* * * It may be that a statute like that here assailed would be valid although applied in suits in which the cause of action arose elsewhere, if the transaction out of which it arose had been entered upon within the state, or if the plaintiff was, when it arose, a resident of the state. These questions are not before us; and we express no opinion upon them. But orderly, effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a state in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon, in which the carrier neither owns nor operates a railroad, and in which the plaintiff does not reside. * * *"

Petitioner also cites, among other cases, *Atchison, Topeka & Santa Fe Railway Co.* v. *Wells*, 265 U. S. 101, 44 S. Ct.

469, 68 L. Ed. 928, *Michigan Central Railroad Co.* v. *Mix*, 278 U. S. 492, 49 S. Ct. 207, 209, 73 L. Ed. 470, and *International Milling Co.* v. *Columbia Trans. Co.*, 292 U. S. 511, 54 S. Ct. 797, 78 L. Ed. 1396.

In the *Wells* case, supra [265 U. S. 101, 44 S. Ct. 470], Texas statutes governing garnishment as construed and applied by the Texas Supreme Court were held invalid as imposing unreasonable burdens on interstate commerce. The statutes were construed by the Texas court

"so as to permit a citizen and resident of another state to prosecute in Texas a cause of action which arose elsewhere against a railroad corporation of another state, which is engaged in interstate commerce, which neither owns nor operates a railroad in Texas, and which has not consented to be sued there."

It is to be noted that the railroad corporation did not even maintain a soliciting agent in Texas and that constructive service was made upon it by Wells.

In *Michigan Central Railroad Co.* v. *Mix*, supra, plaintiff's intestate was killed in Michigan while in the performance of his duties as an employee. He and his wife were then residents of Michigan. Shortly after his death, his widow moved to Missouri and was there appointed administratrix of his estate, and as such brought an action for damages against the railroad under the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq. The railroad was a Michigan corporation which had not been admitted to do business in Missouri and had no railroad lines in that state. It maintained an office in St. Louis through which it solicited freight for transportation in interstate commerce over its lines in other states. The asserted jurisdiction of the state courts was denied on the ground that permitting the suit to be prosecuted in Missouri would be violative of the commerce clause. The court said [278 U. S. 492, 49 S. Ct. 209]:

"From those cases [*Davis* v. *Farmers' Co-op Equity Co.*, 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996, and *Atchison, Topeka & Santa Fe Ry. Co.* v. *Wells*, 265 U. S. 101, 44 S. Ct. 469, 68 L. Ed. 928] that here involved differs only in this: There, the plaintiff was a nonresident. Here the plaintiff had become a resident in Missouri after the injury

complained of, but before instituting the action. For aught that appears, her removal to St. Louis shortly after the accident was solely for the purpose of bringing the suit, and because she was advised that her chances of recovery would be better there than they would be in Michigan. The mere fact that she had acquired a residence within Missouri before commencing the action does not make reasonable the imposition upon interstate commerce of the heavy burden which would be entailed in trying the cause in a state remote from that in which the accident occurred and in which both parties resided at the time."

In *International Milling Co.* v. *Columbia Trans. Co.,* supra, the plaintiff sued in the state in which it conducted its business activities, although it was a foreign corporation. The defendant transportation company, it was held, was engaged in business activities other than mere solicitation. The jurisdiction of the state court was upheld. In the course of the opinion in that case the court remarked with reference to the suitor:

"Certainly its relation to the locality was so permanent and intimate as to relieve it of the opprobrium of an impertinent intruder when it went into the local courts. In saying this we do not hold that the residence of the suitor will fix the proper forum without reference to other considerations, such as the nature of the business of the corporation to be sued. *Denver & Rio Grande Western R. Co.* v. *Terte,* supra [284 U. S. 284, 52 S. Ct. 152, 76 Ed. 295], is opposed to such a holding. Residence, however, even though not controlling, is a fact of high significance." [292 U. S. 511, 54 S. Ct. 799.]

And in commenting on the facts in *Michigan Central R. Co.* v. *Mix,* supra, the court in *International Milling Co.* case (292 U. S. 518, 53 S. Ct. 799, 78 L. Ed. 1936) said:

"There was no proof of such a relation between the residence or activities of the suitor and the forum chosen for the suit as to make the choice a natural or suitable one, and rid the burden on the carrier of at least a measure of its hardship."

While there have been numerous cases which hold that the mere solicitation of business by a foreign corporation does not constitute the "doing of business" requisite to its presence in the state so as to subject it to service of process, the cases which announce the rule reveal that it is subject

to certain qualifications. In *Thurman* v. *Chicago, Milwaukee & St. Paul R. Co.*, 254 Mass. 569, 151 N. E. 63, 65, 46 A. L. R. 563, it was held that a state cannot subject a foreign corporation which is merely soliciting interstate business within its limits, to suit there upon a cause of action not arising out of such solicitation, by service of process on its soliciting agent. The court, however, went on to say:

"It may be that solicitation of business in the light of the statute may be enough upon which to found an action growing out of business resting on that solicitation; but that is not the question here presented and need not be decided."

In order to have interstate commerce, there must not only be a carrier, but there must be shippers. The rights of carriers are not absolute, but relative, as far as the forum in which actions may be brought to litigate claims arising out of interstate business. Manifestly, it would be an undue burden for a carrier to have to defend an action in some distant state far removed from the center of its chief business operations, in cases where the plaintiff in the action went into some state other than his residence or the place where the action arose, to subject the carrier to suit. However, this is not the case here. The Association is a Utah corporation. It has been domiciled here not only at the time of the solicitation of business, but also during the entire course of its existence. It is a creature of the laws of this state.

When a resident of the forum suffers a loss, and a foreign corporation which is alleged to be liable therefor, is present in the forum by solicitation of the kind and character of business out of which the loss arose, it would be an undue burden on the one suffering the loss to be compelled to go into some other state to bring an action when the transaction out of which the loss arose was one solicited in the state where the plaintiff resides. To have redress a shipper must have access to the courts. If he must accept the settlement proposed by some claim agent

or have to go into some distant state at an expense of perhaps several times the amount of the claim, in many instances the shipper would be denied redress. Where, as here, the plaintiff in the suit is a bona fide resident and domicile of the forum; where the damages claimed allegedly resulted from a delict by carrier or its failure to perform a contract in accordance with the applicable rules of law, in connection with a transaction entered into in this state by the agent of the carrier and the plaintiff; and the carrier's business activities in this state are such as are revealed by the recited facts herein; it is not an undue burden on interstate commerce to require the defendant carrier to here contest such suit.

For the reasons above indicated, the writ of prohibition heretofore issued is recalled. Costs to defendant.

LARSON, C. J., and McDONOUGH, WADE, and WOLFE, JJ., concur.

PRATT, J., not participating.