# WESTERN GAS APPLIANCES, Inc. v. SERVEL, Inc.

No. 7958.   Decided May 25, 1953.   (257 P. 2d 950.)

230

See 20 C. J. S., Corporations, sec. 1849.

*E. L. Schoenhals* and *J. Royal Andreasen*, Salt Lake City, for appellant.

*Cheney, Marr, Wilkins & Cannon* and *Richard H. Nebeker*, Salt Lake City, for respondent.

CROCKETT, Justice.

We are here confronted with the question of whether the defendant corporation was doing business in this state so that service of summons upon its regional service manager brought it within the jurisdiction of our courts.

Defendant, a Delaware corporation, has its principal place of business in Indiana, where it manufactures gas and electric home appliances which are distributed nationally through wholesale distributors in the various states. Plaintiff, Western Gas, Inc., was for several years one of such distributors. On June 10, 1951, Servel terminated its contract and gave Zion's Cooperative Mercantile Institution of Salt Lake City the franchise. As a result of alleged

wrongs in connection therewith, plaintiff commenced this action.

It is not disputed that Servel maintains no place of business of any kind in Utah, has no office, telephone nor real nor personal property, and has no employee located here. Because of this, plaintiff attempted service of summons on defendant by serving a Mr. Frank Reid, regional service manager for Servel, who was temporarily within the state of Utah staying at a hotel.

The trial court granted defendant's motion to dismiss for lack of jurisdiction. Plaintiff appeals.

The part of rule 4(e)(4) U.R.C.P. dealing with service of summons on corporations and under which plaintiff claims to have acquired jurisdiction of the defendant is:

"If no * * * officer or agent [of the corporation] can be found in the state, and the defendant * * * does business in this state, then upon the person doing such business * * *."

There is implicit in the trial court's order granting the motion to dismiss a finding that defendant was not doing business in Utah although he made no express findings of fact. As this court stated in *Mower* v. *McCarthy*:[1]

"In reviewing a case * * * where issues of fact are involved and there are no findings of fact, we do not review the facts but assume that the trier of the facts found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it."

Also to be remembered is that plaintiff has the burden of affirmatively showing that defendant was doing business within the state.[2]

Under Servel's contract with its distributor title to all shipments passed from Servel in Indiana. The contract

[1]122 Utah 1, 245 P. 2d 224, 226.
[2]*Mayer* v. *Wright*, 234 Iowa 1158, 15 N. W. 2d 268.

required the distributor itself to handle all the business of marketing Servel products in Utah, to maintain agreements for distribution to local dealers (retailers), to promote and stimulate sales activities, maintain an installation and service department "for the purpose of supervising the service activities of dealers * * * and training dealers' service men" and to "accept responsibility for servicing * * * all Servel products sold by * * * [such] dealers" and to maintain an adequate stock of parts for the above purposes and to fufill the warranty on Servel products. The only deviation from this method shown was that one shipment of water heaters, while still the property of Servel, was sent to plaintiff to replace defective heaters, in accordance with terms of a Servel warranty; there was also an isolated transaction of the installation of one air-conditioning and heating system by Servel in the year 1948.

Plaintiff cites and relies on *Industrial Comm.* v. *Kemmerer Coal Co.*[3] and the *Wabash Railroad Co.* v. *District Court of Third Judicial Dist.*[4] wherein we approved the doctrine that a regular course of solicitation of business coupled with other business activities would constitute "doing business" in the state. But what plaintiff here claims was "solicitation" amounted only to infrequent sales talk about the Company's products generally, designed to influence people to buy Servel equipment from dealers. The evidence is that regional managers for sales and for service, each visited the distributor about every 90 days for the purpose of general promotion and supervision of the business; the sales manager talked with architects, contractors and prospective customers in the interest of stimulating sales, but not for the purpose of consummating particular sales; the service manager inspected defective parts to see if they came within the terms of the Servel warranty, and on several occasions

[3]106 Utah 476, 150 P. 2d 373.
[4]109 Utah 526, 167 P. 2d 973.

went to homes to give advice to service men (not Servel employees) working on Servel appliances, but he maintains that he never personally serviced such appliances. Certain of defendant's employees also participated in periodic clinics in which local service men were instructed in servicing the products and also took part in annual conferences arranged for by the distributor where retailers and their salesmen were shown new models of Servel wares and given instructions and "pep talks" about the products and sales techniques.

There is no evidence that the defendants' employees either solicited, or made, any direct sales of goods in Utah, or sold any destined for Utah except to the wholesale distributors. The statement of Seward Abbott, regional manager for Servel, is:

"No * * * representative of Servel has business relations with any dealers [retailers] or members of the public in Utah."

Plaintiff seeks support in the statement of its president, Harold A. Fresne, that a former regional service manager of the defendant

"Blair Hughes * * * [while] an employee of Servel * * * has serviced defendant's products in the State of Utah on many and numerous occasions."

This matter would not be controlling for three reasons: (1) The court was not obliged to so find because of the evidence that the regional service manager had no such duty and does not perform such services; (2) Mr. Hughes was a "former" regional service man and his activities did not relate to the time in question; (3) there is no indication that Hughes or Servel made any charge or received any compensation for such services, and (4) it is extremely doubtful whether servicing equipment, even if by Servel, would amount to doing business within the state. However, as is apparent from the circumstances herein delineated,

it is unnecessary for this decision to rest upon any such narrow point.

No authority has been cited which would support a conclusion that the activities of defendant herein above enumerated, are sufficient to render a foreign corporation amenable to process. It is indisputable that the mere presence here of an officer of a foreign corporation will not subject it to suit,[5] nor will the sale of goods at a foreign factory to an independant distributor located within this state[6]; neither is the aiding of the distributor in his duties of promoting sales and servicing activities of independent dealers [retailers] through instructing or training them and their employees;[7] nor the giving of a warranty and the shipping to an independent dealer the parts and units to meet its terms.

It is also well settled that an isolated transaction such as the installation of the one air-conditioning unit and heating system would not create the status of doing business here.[8] As the court said in *Dahl* v. *Collette*:[9]

"* * * if * * * [the corporation's presence] is manifested only by casual, sporadic, or isolated exertions of the kind which it ordinarily performs, these indicia of its presence are too equivocal and uncertain to support the inference that it is doing business here."

Thus before defendant's acts could properly be classified as doing business within the State, it would have to be

---

[5]*St. Clair* v. *Cox*, 106 U. S. 350, 1 S. Ct. 354, 27 L. Ed. 222.

[6]*Holzer* v. *Dodge Brothers*, 233 N. Y. 216, 135 N. E. 268; *S. B. McMaster, Inc.*, v. *Chevrolet Motor Co.*, D. C., 3 F. 2d 469; *Truck Parts, Inc.*, v. *Briggs Clarifier Co.*, D. C., 25 F. Supp. 602.

[7]See *Truck Parts, Inc.*, v. *Briggs Clarifier Co.*, supra, *Peebles* v. *Chrysler Corp.*, D. C., 57 F. 2d 867.

[8]See *Advance-Rumely Thresher Co.* v. *Stohl*, 75 Utah 124, 283 P. 731.

[9]202 Minn. 544, 279 N. W. 561, 566.

shown that there was some degree of continuity or regularity of such acts, coupled with some manner of entering into direct business transactions with others. If such circumstances did exist, the acts of defendant herein shown might properly be considered in augmentation of other proof as to doing business.

We are appreciative of the fact that the policy underlying decisions of the court in cases such as this requires consideration of fair play to citizens desiring to seek redress in court for claimed injuries, as well as to the fact that foreign corporations who do business here should not be afforded any unfair advantage against local competing companies who pay taxes and licenses for doing business here and are subject to the jurisdiction of our courts.

But jurisdiction of citizens of other states may not be arbitrarily conferred by the law, nor assumed by the courts, of sister states. Under the federal constitution as interpreted by the United States Supreme Court, the authority of state courts over foreign corporations is limited to circumstances where they do

"business in the state  *  *  *  in such a manner and to such an extent that its actual presence there is established."[10]

In this context, as noted in *International Shoe Co.* v. *State of Washington*,[11] the term "presence" is

"used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process."

If the rule were otherwise, burdens might be imposed upon manufacturers of nationally known and marketed products which they would be unwilling to risk, thus making it difficult or impossible for resident wholesalers to

[10]*Bank of America* v. *Whitney Central National Bank*, 261 U. S. 171, 43 S. Ct. 311, 312, 67 L. Ed. 594; *Street & Smith Publications* v. *Spikes*, 5 Cir., 120 F. 2d 895.
[11]326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95.

purchase such products even at the factory as plaintiff was doing in the instant case.

There has been cited no authority, and we have found none which would bring the paucity of facts upon which plaintiff contends that the defendant Servel was doing business here within the meaning of that phrase as established by the numerous cases adjudicated upon the subject.[12] The trial court correctly so ruled.

Affirmed. Costs to respondent.

McDONOUGH and HENRIOD, JJ., concur.

WADE, J., concurs with the result.

WOLFE, Chief Justice.

I concur in the result. At the incipience of his opinion, Mr. Justice CROCKETT quotes from *Mower* v. *McCarthy*, 122 Utah 1, 245 P. 2d 224, 226, as follows:

"In reviewing a case * * * where issues of fact are involved and there are no findings of fact, we do not review the facts but assume that the trier of the facts found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it."

In certain cases, it is no doubt proper for this court to indulge in that assumption. In my dissenting opinion in *Mower* v. *McCarthy*, I explained why I thought in view of the state of the record in that case we could not indulge in that assumption. In the instant case, I think we need not resort to that assumption. While it is true that the trial court made no findings of fact, the court did state in its "Order and Judgment of Dismissal" that "the defendant corporation is not subject to service of process within the State of Utah." Thus I think it clear without indulging in any assumption that the trial court found that the defendant was not doing business in Utah.

[12]*McGraff* v. *Charles Antell, Inc.*, 123 Utah 166, 256 P. 2d 703; see 146 A. L. R. 945, 101 A. L. R. 129, 60 A. L. R. 1011.