# `RICHARDSON *v.* AINSA, ADMINISTRATOR OF ELY.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 28.    Argued.November 2, 1910.—Decided November 14, 1910.

Notwithstanding the contention of appellant in this case, the decision of this court in *Ainsa* v. *New Mexico & Arizona R. R. Co.*, No. 2, 175 U. S. 91, that the District Court of Arizona had jurisdiction of an action to quiet title brought by a grantee of the Mexican Government of land in the territory included in the Gadsden Purchase, did not proceed upon a mistake in fact and is not inconsistent with the reasoning of the decision of *Ainsa* v. *New Mexico & Arizona R. R. Co.*, No. 1, 175 U. S. 76.

Under the Gadsden Purchase Treaty with Mexico of December 30, 1853, 10 Stat. 1031, the good faith of the United States was pledged to respect Mexican titles, and one whose title was absolutely perfected prior to the treaty was not bound to present his title for confirmation to the Court of Private Land Claims under the act of March 3, 1891; nor did the fact that he prayed for confirmation, in a suit brought by the United States against him in that court to declare the patent void or to determine boundaries if valid, limit his claim to the recovery of the price specified in the act for land included within the grant but patented to others by the United States.

While under § 14 of the act of March 3, 1891, where the claimant of a Mexican land grant himself presented his claim to a Mexican grant in the Gadsden Purchase to the Court of Private Land Claims he might be limited to recovery in the case of lands within his grant sold by the United States to the price specified in the act, where he is brought into the court by the United States in a suit attempting to set aside a grant, title to which was perfected before the treaty, he is not so limited and patents issued by the United States to lands within the boundaries of his grant are mere usurpations and void.

95 Pac. Rep. 103, affirmed.

THE facts, which involve the title to land in Arizona,

in the territory known as the Gadsden Purchase, are stated in the opinion.

*Mr. S. L. Kingan* for appellant, submitted:

Although this court had already once decided in this case (*Ainsa* v. *New Mexico Ry.*, 175 U. S. 91) that the District Court of Arizona did have jurisdiction, yet, from the face of the decision it is apparent that the grounds supporting the decision are diametrically opposed to the conclusion arrived at, so that it is patent from the decision itself that it should have been to the contrary.

The acts of July 22, 1854, 10 Stat. 308, and July 15, 1870, 16 Stat. 304, remained in active force and effect until the act of March 3, 1891, creating the Court of Private Land Claims.

Between July 22, 1854, and March 3, 1891, during which time this suit was instituted, the only tribunals, therefore, that had jurisdiction to try title to land grants was the surveyor general of New Mexico and Arizona and the Congress of the United States. *Ainsa* v. *United States*, 175 U. S. 91, and see *Astiazaran* v. *Santa Rita Co.*, 148 U. S. 80.

It is immaterial how this court came to make its said error, whether through stipulations of the parties or otherwise, as jurisdiction cannot be stipulated, and it is always subject to be questioned by a litigant.

The previous decision as to jurisdiction should be changed to the conclusion derived from the grounds cited in support of the correct decision.

The lands in suit were public lands of the United States. While the United States was bound to respect the titles of Mexican grantees, all the land ceded belonged to the United States except the interests of Mexican grant claimants, and a statute was passed giving these grant claimants a right and an opportunity to establish their

claims of record. Until this was availed of by the grantee the land was at least *prima facie* public land. No notice having been given for twenty-five years, the United States was fully able to give such title and patent to the land as would bar the Mexican grant claimants from denying that the lands were public lands.

Under the Gadsden Purchase Treaty grantees from Mexico, of land embraced in the ceded district, are entitled to be protected in their property rights, the same as natural-born Americans. This would probably be so even if nothing were provided in the treaty. But that matter is definitely settled in the context. There is nothing in the statute requiring grantees to prove claims that violate the obligations of the United States under the treaty.

There is no confiscation nor deprivation without due process of law. The statute says that under certain circumstances, when land is patented to others, the grantee from Mexico shall take money in lieu of such land. The Congress of the United States decided that money would be a just compensation, and we have no higher authority. Therefore the grant claimant must have delayed so long as to give one a *prima facie* right to a patent. Even though the statute be in violation of treaty rights, there is no other recourse for the judiciary department than upholding the law. The violation of a treaty is not grounds for the court to act upon. The judiciary department must follow the law promulgated by the legislative department. If the legislators choose to violate a treaty, the affair is of a political aspect, and not a matter for the court's jurisdiction. *Botiller* v. *Dominguez,* 130 U. S. 238; *Edye* v. *Robertson,* 112 U. S. 580; *In re Ah Lung,* 18 Fed. Rep. 28; *Horner* v. *United States,* 143 U. S. 570.

The statute, however, does not violate, but is in furtherance of, the treaty. *United States* v. *Martinez,* 184 U. S. 441.

Even if the Mexican grantee is brought before the

·court against his wishes, he is bound by the statute requiring him to accept money ·in lieu of patented lands within the boundaries of his grant. The United States has power to bring a party into court and have him bound by the decision. The Arizona decision, following the decision of the case in 34 L. D. 612, erred in saying that the defendant was not bound because he had not voluntarily submitted to the court.

All the principles of equity—laches, unjust enrichment, estoppel, fraud, etc.—unite in overthrowing any claim to this Mexican grant. Besides these equitable principles there are both the spirit and express wording of the statute directly in point, the interpretation of which cannot possibly be distorted to cover imaginary exceptions. See United States v. Conway, 175 U. S. 60; Real de Dolores v. United States, 175 U. S. 75; Ainsa, Admr., v. Magee, 34 L. D. 506; Botiller v. Dominguez, 130 U. S. 238; United States v. Martinez, 184 U. S. 441; United States v. Baca, 184 U. S. 653.

The Court of Private Land Claims had no right to determine that the grant was a perfect one at the time of the treaty, but its only authority was to pass upon its jurisdiction, and to find that it had no jurisdiction.

The statute provides a means whereby the claimants' rights could have been established and recognized and proved for the benefit of all concerned. The statute provides for an adequate means of protecting one's rights in land and for preventing anyone being injured by unknown claims. Doolan v. Carr, 125 U. S. 618; Newhall v. Sanger, 92 U. S. 761, cited by appellee, do not sustain his position, nor do Cameron v. United States, 148 U. S. 301; Reynegan v. Bolton, 95 U. S. 33.

Appellee's sole authority for the decision of the Arizona Supreme Court is that of the Secretary of the Interior, 34 L. D. 506, which is offset, however, by Botiller v. Dominguez, 130 U. S. 238.

*Mr. Joseph W. Lewis*, with whom *Mr. Frank H. Hereford* and *Mr. Selim M. Franklin* were on the brief, for appellee:

This court having heretofore decided on appeal in this case, *Ainsa* v. *New Mex. & Ariz. R. R. Co.*, 175 U. S. 76, that the District Court had jurisdiction of this action, that question is settled and cannot be raised again. *United States* v. *Camou*, 184 U. S. 572, 574; *Hunt* v. *Ill. Cent. Ry. Co.*, 184 U. S. 77, 99; *Sibbald* v. *United States*, 12 Pet. 488, 492; *Thompson* v. *Maxwell Land Grant Co.*, 168 U. S. 451, 471; *Snyder* v. *Pima County*, 6 Arizona, 41, 47; *Beiseker* v. *Moore*, 98 C. C. A. 372; *Washington Bridge Co.* v. *Stewart*, 3 How. 413; *Whyte* v. *Gibbs*, 20 How. 541.

The grant, being a complete and perfect grant prior to the treaty of cession, the grantee thereof, his heirs and assigns, had title in fee, which was not in any way affected by the change of sovereignty. *United States* v. *Percheman*, 7 Pet. 86, 87; *Ainsa* v. *New Mex. & Ariz. R. R. Co.*, 175 U. S. 76, 91; *Dent* v. *Emmeger*, 14 Wall. 308, 314; *Trenier* v. *Stewart*, 101 U. S. 797, 810.

The treaty of cession, commonly called the Gadsden Treaty, so provides. *Ely* v. *United States*, 171 U. S. 220, 241.

The lands embraced within the grant being private property the patents issued to parts thereof under the United States public land laws were utterly void. *Knight* v. *United Land Assn.*, 142 U. S. 161, 216; *Polk* v. *Wendell*, 9 Cranch, 87, 102.

The President of the United States has no right to issue patents for land the sale of which is not authorized by law. *Easton* v. *Salisbury*, 21 How. 426, 432.

Under the acts of July 22, 1854, 10 Stat. 308, and July 15, 1870, 16 Stat. 304, the lands within the limits of the said grant were reserved from sale or other disposal by the Government. 34 L. D. 506, 517.

While so reserved the homestead patents under which Richardson claims title were issued. Patents for lands reserved from sale are void. *Burfenning* v. *Chicago R. R. Co.*, 163 U. S. 321, 325; *Morton* v. *Nebraska,* 21 Wall. 660, 675; *Polk* v. *Wendell,* 9 Cranch, 87, 102; *Minter* v. *Crommelin*, 18 How. 87, 89; *Doolan* v. *Carr*, 125 U. S. 618, 642; *Noble* v. *Union River R. R. Co.*, 147 U. S. 165, 176.

Lands within the limits of a claimed Mexican grant in Arizona, being reserved from sale or disposal by the acts of Congress aforesaid, are not "public lands" of the United States, and are not subject to sale under the public land acts. *Cameron* v. *United States*, 148 U. S. 301, 311; *Reynegan* v. *Bolton*, 95 U. S. 33, 37; *Newell* v. *Sanger*, 92 U. S. 761, 766.

Under the cited acts of Congress the reservation became immediately operative upon all lands within the ceded territory covered at the time by any Spanish or Mexican claim which originated prior to the treaty of cession. Op. Sec. of Int., 30 L. D. 97, 105.

The act of Congress creating the Court of Private Land Claims does not deprive the owner of a perfect grant, if he is brought into that court as a party defendant at the suit of the Government, of lands which previously had been unlawfully and without right patented to others, under the public land laws, and such lands are not excluded by the terms of that act from the grant as confirmed by that court. *Ely's Admr.* v. *Magee*, 34 L. D. 506, 517; *Richardson* v. *Ainsa*, 95 Pac. Rep. (Ariz.) 103, 105.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit to quiet title brought in 1887 by the appellee's intestate in the District Court of Arizona. The decision was in favor of the appellee, and this decision was affirmed by the Supreme Court of the Territory,

whereupon the defendant Richardson appealed to this court.

The appellee represents a title derived from a grant by the Mexican Government of land in the portion of Arizona afterwards acquired by the Gadsden Purchase, December 30, 1853. 10 Stat. 1031. At the time of the Gadsden Purchase this title was complete. The appellant claims through mesne conveyances from holders of patents issued by the United States in 1879 and 1880 under the homestead laws.

The first error assigned is that the District Court was without jurisdiction. That point already has been decided against the appellant in this very case under the name of *Ainsa v. New Mexico & Arizona R. R. Co.*, No. 2, 175 U. S. 91, so that it is not open to him to urge it. *United States* v. *Camou*, 184 U. S. 572, 574. But it is proper to say that in our opinion the decision did not proceed upon a mistake of fact and is not inconsistent with the reasoning of the immediately preceding decision between the same parties, 175 U. S. 76, 86, although No. 2 was begun before and No. 1 after the passage of the act of March 3, 1891, c. 539, 26 Stat. 854, establishing a Court of Private Land Claims.

In 1892 the United States brought a suit against the present appellee in the Court of Private Land Claims, alleging that his claim was void, and that the United States had granted patents for portions of the land, praying that the title might be adjudicated, and, if valid, the boundaries established, excepting such parts as might have been disposed of by the United States. The appellee answered setting up title, and praying confirmation. Ultimately in pursuance of the decision of this court, *Ely's Administrator* v. *United States*, 171 U. S. 220, a decree was entered in his favor and a patent issued to him on October 29, 1906, specifying no exceptions other than one of "gold, silver, or quicksilver mines or minerals of the same."

The appellant however contends that by virtue of the
above-mentioned statute of March 3, 1891, the effect of
the appellee's appearance in the Court of Private Land
Claims was to forfeit all portions of the land in contro-
versy that had been patented by the United States, and
to give the appellee in place of it a claim for not exceeding
$1.25 per acre so patented against the United States. The
contrary decision is the other error assigned.

Of course, the patents for homesteads issued in the
name of the United States, on the facts that we have
stated, were a mere usurpation and were void. The lands
covered by them, whether reserved or not by the acts of
July 22, 1854, c. 103, § 8, 10 Stat. 308; July 15, 1870,
c. 292, 16 Stat. 304, were not public lands, but private
property, which the Government was bound by the ex-
press terms of the Gadsden Treaty of December 30, 1853,
to respect. The appellant's claim rests solely on an in-
terpretation of §§ 8 and 14 of the above-mentioned act
of 1891, that would cut down the performance of the
treaty promise by the United States to at least to the
narrowest limits consistent with good faith. We are of
opinion that the different construction adopted by the
court below, and also by the Acting Secretary of the
Interior in *Ely* v. *Magee*, 34 L. D. 506, 512, is correct.
After providing in § 6 for incomplete titles the act goes
on in § 8 to deal with complete ones. Holders of claims
under such titles, it says, "shall have the right (but shall
not be bound) to apply to said court" for a confirmation
of their title. Of course, this means that the title is
recognized as good without the proceeding in court.
*Ainsa* v. *New Mexico & Arizona R. R. Co.,* 175 U. S.
76, 90.

The confirmation is granted, "excepting any part of
such land that shall have been disposed of by the United
States," and without prejudice to conflicting private in-
terests. Then, in § 14 it is enacted that "if in any case it

shall appear that the lands or any part thereof decreed to any claimant under the provisions of this act shall have been sold or granted by the United States to any other person, such title from the United States to such other person shall remain valid, notwithstanding such decree," with a provision for a judgment in favor of the claimant against the United States for the proved value of such granted lands, not exceeding $1.25 per acre. If this were all there could be no question that the exception of lands granted by the United States was merely a condition attached to the decree of confirmation, and did not purport to affirm such grants if the claimant did not see fit to go into the Court of Private Land Claims.

But in § 8 there is a further provision by which the United States may proceed against the claimant, as it did against the appellee, on the ground that the title or boundaries are open to question, and therefore the court is to determine the matter, "but subject to all lawful rights adverse to such claimant or possessor, as between such claimant and possessor and any other claimant or possessor, and subject in this respect to all the provisions of this section applicable thereto." The appellant argues that this provision gives a wider meaning to § 14. He says that the words "if in any case" it shall appear that lands have been sold by the United States apply as well to a proceeding by the United States as to one where the claimant goes forward. He argues that so to apply them is just, in view of the supposedly unknown boundaries of the old Mexican grants and the policy of the United States in offering its public lands to settlers—that otherwise there is a suspended threat and possibility of a claimant turning up after many years and dispossessing those who had been encouraged by the United States to go upon the land. *Botiller* v. *Dominguez*, 130 U. S. 238. But the considerations mentioned in the case cited did not prevent the United States in the act of March 3, 1891, from leaving

the holders of perfected titles free not to present them to the court as they were required to do in earlier statutes. The good faith of the United States was pledged to respect the Mexican titles. It recognized in the act of 1891 that holders of such titles need not go into the Land Claims Court to get them confirmed, and we should be slow to suppose that it meant to make a doubt in the Department of Justice as to the validity of a perfect title a ground for cutting down what otherwise it was bound to protect and did by the statute leave intact. But for that unfounded doubt the appellee would have been secure in his rights, and could have turned the holders of the homestead patents off his land. *United States* v. *Martinez*, 184 U. S. 441, 445. The proceeding by the Government was a matter over which he had no control, and ought not to affect his rights. Looking at the words of § 14 more exactly they do not require the appellant's construction. "If in any case" means in any case before the court that the act established. And when the section goes on, "it shall appear that the lands or any part thereof decreed to any claimant under the provisions of this act shall have been sold," it is reasonable to suppose that it has reference to those cases in which a claimant is seeking a decree, that is to say, where the claimant is the plaintiff in the case. It is true that a petition by the United States may end in the same result, but the terms of the sentence and the duty of the Government concur in leading us to limit the words as we do. On the other hand, the consideration mentioned sufficiently shows that the claimant did not impair his position by praying for confirmation in his answer. The prayer merely expressed what would have happened without it by the force of law.

*Judgment affirmed.*