## ARMOUR FERTILIZER WORKS v. SANDERS et al.

### No. 6796.

Circuit Court of Appeals, Fifth Circuit.
March 10, 1933.

Dissenting Opinion March 22, 1933.

HUTCHESON, Circuit Judge, dissenting.

Alfred McKnight and Warren Scarborough, both of Fort Worth, Tex., and Walter C. Kirk, of Chicago, Ill., for appellant.

Rollin W. Rodgers, of Texarkana, Tex., and Alvin H. Lane and Robert Lee Guthrie, both of Dallas, Tex., for appellees.

Before BRYAN, SIBLEY and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Two insurance corporations of Connecticut owed W. D. Sanders, a citizen of Texas,

insurance money for loss by fire of property in Texas which had constituted part of his homestead. They were served in Illinois as garnishees on proceedings in foreign attachment brought there by Armour Fertilizer Works, a corporation of Illinois, against Sanders on notes held against him which contained a waiver of all homestead and exemption rights. The garnishees by amended answers admitted liability, but set up that the money was claimed by Sanders to be his homestead and not liable to garnishment. Judgment by default after the published notice required by Illinois law was rendered against Sanders that the attachment be sustained and that Armour Fertilizer Works recover of him its debt fixed at $7,589.81 and costs, and that execution issue. Before trial of the answers of the garnishees they, claiming to be mere stakeholders, filed under 28 USCA § 41 (26) as rewritten by Act of May 8, 1926, an interpleader proceeding in the District Court in Texas where Sanders was domiciled, naming him and Armour Fertilizer Works as the adverse claimants, paid the money into court, and obtained an interlocutory injunction against further proceedings in Illinois. A dismissal at the instance of Armour Fertilizer Works of the bill for interpleader was reversed on appeal, National Fire Ins. Co. v. Sanders, 38 F.(2d) 212, 215, this court saying: "The District Court had jurisdiction to grant relief to appellants and to determine which of the claimants is entitled to the fund deposited in court, neither of which parties can lose anything by the filing of the bill. If a lien attached to the funds, by virtue of the garnishment, it followed them into the registry of the District Court and may be given full force and effect. On the other hand, if the exemption claimed by Sanders is superior, judgment may be awarded to him."

Upon the trial a decree was given in favor of Sanders, and Armour Fertilizer Works appeals.

The appellant renewed its motion to dismiss, making the same contentions that were overruled on the former appeal. The questions then decided stand as the law of the case. Richardson v. Ainsa, 218 U. S. 289, 31 S. Ct. 23, 54 L. Ed. 1044; Ames v. Quimby, 106 U. S. 342, 1 S. Ct. 116, 27 L. Ed. 100. If within our power, we have no disposition to review them. Wolff Packing Co. v. Court of Industrial Relations, 267 U. S. 552, 45 S. Ct. 441, 69 L. Ed. 785; Messinger v. Anderson, 225 U. S. 436, 32 S. Ct. 739, 56 L. Ed. 1152. But a contention not before presented is that the Act of May 8, 1926, as here applied is unconstitutional because invading the reserved rights of the state of Illinois to try cases in its courts, and because denying full faith and credit to the proceedings had there. The first objection is answered by the grant of judicial power in article 3 of the Constitution. Suits for interpleader in which actions in other courts are enjoined were familiar to equity when the Constitution was adopted, and are one of the forms of controversy to which, when arising between citizens of different states, the federal judicial power was extended. The act enlarges the processes of the District Court to cover a broad territory, but otherwise authorizes only an ordinary form of equitable relief. The second objection goes not to the act itself but to the decision of this controversy. The District Court, of course, is bound on an interpleader to give full faith and credit to the garnishment proceedings in Illinois. Cooper v. Newell, 173 U. S. 567, 19 S. Ct. 506, 43 L. Ed. 808. What that full credit is and whether it has been afforded, it is our duty to determine on this appeal.

The statutes of Illinois (see Smith-Hurd Rev. St. Ill. 1931, c. 11, § 1 et seq.) permit suit by the attachment of a nonresident's property, including a garnishment of debts due him, if sufficient leviable property is not found. The defendant is to be served personally if possible, and, if not, by four weeks' published notice, a copy being mailed to his last known address. If he does not appear, and is served only by publication, default judgment may be entered on the plaintiff's affidavit of the amount due and execution issued but only against the property or debts attached. All judgments against the same defendant rendered at the same term, whether on attachment or summons, share pro rata in the fund raised. It is stipulated that the proceedings here in question were according to the statutes, and that by the settled law of Illinois, on a trial of the answers to the garnishment, the claim of exemption of the insurance would have been overruled. It is held generally that exemption laws are a part of the remedy of the forum, and have no force beyond the bounds of the state enacting them. Chicago, Rock Island & P. R. Co. v. Sturm, 174 U. S. at page 717, 19 S. Ct. 797, 43 L. Ed. 1144; Bynum v. Johnston (C. C. A.) 222 F. 659; Bristol v. Brent, 38 Utah, 58, 110 P. 356; Penn R. Co. v. Rogers, 52 W. Va. 450, 44 S. E. 300, 62 L. R. A. 178; Person v. Williams-Echols Dry Goods Co., 113 Ark. 467, 169 S. W. 223. But for the injunction of the federal court the state court would have compelled the payment

of the money into court to satisfy such creditors as might have obtained judgments against Sanders. We cannot agree that, because final judgment had not gone against the garnishees, the proceeding was due no faith and credit. The full faith and credit clause of the Constitution, Const. art. 4, § 1, speaks of judicial proceedings, not judgments merely. By a valid exercise of jurisdiction over the persons of the garnishees there present, the Illinois court was in process of compelling payment of the insurance into court, and had on service sufficient to that end adjudged Sanders' indebtedness to Armour Fertilizer Works and the sufficiency of the attachment process. There had arisen as against him a right to detain the debt as a prospective fund and to apply it to the demands of plaintiff and other creditors, which may aptly be termed a lien. It dates from the service of the writ of garnishment. Though inchoate and subject to defeat if final judgment fails either as to the main debtor or the garnishee, it is a substantial legal right. National Surety Co. v. Medlock, 2 Ga. App. 665, 58 S. E. 1131; Florida E. C. R. Co. v. Consolidated Engineering Co., 95 Fla. 99, 116 So. 19. It is treated as a lien obtained by operation of law under the Bankruptcy Act (11 USCA), and stands or falls according as the service of garnishment was more or less than four months before bankruptcy, without any reference to the date of final judgment. Anderson v. Ashford & Co., 44 Ga. App. 177, 160 S. E. 804; Globe & Rutgers Fire Ins. Co. v. Brown (D. C.) 52 F.(2d) 164; Cohn & Co. v. Drennan (D. C.) 19 F.(2d) 642; In re Phillips & Co. (D. C.) 224 F. 628; In re Maher (D. C.) 169 F. 997.

██ The garnishment is in fact a seizure at law of equitable assets not otherwise subject to execution for administration to all creditors who establish their debts in the forum. It is comparable to the seizure of assets under a creditor's bill, where it is settled that such seizure establishes a lien, inchoate and subject to like defeats as is a garnishment until final decree, but good against a bankruptcy begun after four months. Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122; Blair v. Brailey (C. C. A.) 221 F. 1. In an Illinois case, National Bank of America v. Indiana Banking Co., 114 Ill. 483, 2 N. E. 401, 403, where, after service of garnishment, but before judgment against the garnishees, the debt was partially assigned by checks drawn against it, and it became necessary to determine when the garnishment lien arose, the court said:

"The principle of the former decisions has been recently restated by this court in the case of Reeve v. Smith, 113 Ill. 47, where it was said, in construing the Thirty-Seventh section of the attachment act (Rev. St. 1874,) 'that property, real and personal, attached, and funds in the hands of the garnishee, are placed on the same footing; that is, when attached, such property or funds are appropriated from that time to the payment of a certain class of judgment creditors specially enumerated. From the time of the levy or service of the writ, the property or funds are held by virtue of the statute for the benefit of all creditors of the attachment debtor, who shall obtain judgments against him within the time and in the manner specified in the statute. It is the whole property or funds attached, and not any specific part or portion, that is held until it shall be ascertained who or what creditors are entitled to share in the proceeds.' "

In National Fire Ins. Co. v. Chambers, 53 N. J. Eq. 468, 32 A. 663, Justice Pitney, then Vice Chancellor, examined a garnishment lien before final judgment which had been obtained in Pennsylvania, a state not the domicile of the garnishee or of the main debtor as in the case at bar, and upheld the lien in an interpleader in New Jersey as against an assignment of the garnished debt made subsequent to the service of garnishment. The case is cited with approval in Chicago, Rock Island & P. R. Co. v. Sturm, 174 U. S. 710, 19 S. Ct. 797, 43 L. Ed. 1144. In the Sturm Case the garnishment had issued in Iowa, before the main debtor sued the garnishee in Kansas. Final judgment had not been rendered against the garnishee. The garnishment was not held to be without effect in Kansas for lack of a final judgment, but it was adjudged that full faith and credit required that it be held a good ground either to postpone the trial or to abate the suit of the main debtor in Kansas, because a good defense if the garnishee should be finally held liable in Iowa. Again in King v. Cross, 175 U. S. 396, 20 S. Ct. 131, 44 L. Ed. 211, the priority of a garnishment served but not gone to judgment in one state was upheld against proceedings on an assignment of the garnished debt in another state. In the two cases last cited the garnishment was in the state of the garnishee's domicile, but that equally effective jurisdiction over the debt may be obtained by a lawful personal service on the garnishee elsewhere, whether an individual or a corporation, is established in Harris v. Balk, 198 U. S. 215, 25 S. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084, and Louisville & Nashville

R. Co. v. Deer, 200 U. S. 176, 26 S. Ct. 207, 50 L. Ed. 426. Turning to the older cases in Wallace v. McConnell, 13 Pet. 136, 10 L. Ed. 95, a suit upon a note was filed in the federal court, and afterwards the debt was garnished in a state court, the garnishee admitting indebtedness, but the case not having reached final judgment. The pending garnishment was pleaded in the federal court, and the plea overruled. The insufficiency of it was upheld in the Supreme Court on the sole ground that the jurisdiction of the federal court over the debt had attached first. It was said (page 150 of 13 Pet.) : "If the attachment had been conducted to a conclusion and the money recovered of the defendant before the commencement of the present suit, there can be no doubt, that it might have been set up as a payment upon the note in question. And if the defendant would have been protected pro tanto, under a recovery had by virtue of the attachment, and could have pleaded such recovery, in bar, the same principle would support a plea in abatement, of an attachment pending prior to the commencement of the present suit. The attachment of the debt, in such case, in the hands of the defendant, would fix it there, in favor of the attaching-creditor, and the defendant could not afterwards pay it over to the plaintiff. The attaching-creditor would, in such case, acquire a lien upon the debt, binding upon the defendant, and which the courts of all other governments, if they recognize such proceedings at all, would not fail to regard. If this doctrine be well founded, the priority of suit will determine the right." It was so held, citing, among other cases, Embree v. Hanna, 5 Johns. (N. Y.) 101. In that case Chief Justice Kent maintained that the first garnishment served fixed a lien which the courts of other states were bound to respect.

In Mooney v. Buford & George Mfg. Co. (C. C. A. 1896) 72 F. 32, 38, Justice Woods for the court said: "It is notice to the debtor [garnishee] that gives the plaintiff in garnishment a lien upon the debt * * * as effectually as, upon like notice by publication, it may dispose of a chattel seized in attachment. * * * 'Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.' The proceedings and judgments of the courts of the United States are entitled to equal respect, and it follows that a proceeding in garnishment, begun in any court of competent jurisdiction against a corporation doing business and subject to process in two or more states, would be entitled to precedence of any suit for the same cause commenced later in

another district or state, and that the supposed inconvenience of different suits in different jurisdictions, and danger of debtors being compelled to discharge their obligations more than once, is more imaginary than real. No court can rightfully disregard the lien upon the debt which is established by the service of process in garnishment upon the debtor." The danger of double payment threatened in Lancashire Ins. Co. v. Corbetts (1897) 165 Ill. 592, 46 N. E. 631, 36 L. R. A. 640, 56 Am. St. Rep. 275, and led the Illinois court to refuse a judgment against the garnishee, although process of garnishment was first served in Illinois because the first judgment had been gotten by a later garnishing creditor in Wisconsin. The Illinois court saw no way to prevent the Wisconsin court from enforcing its judgment. The remedy pointed out in Mooney v. Buford & George Mfg. Co., supra, in 1896 was upheld as correct in the Sturm Case in 1899. The later garnishment in Wisconsin should have been defended by pleading the former one in Illinois as ground for continuance or abatement, carrying the question to the Supreme Court of the United States, if necessary. See also Solomon v. Continental Ins. Co., 261 Mass. 360, 158 N. E. 774. Priority of garnishment rather than priority of judgment is the practicable, as well as logical, test. The impasse resulting from the latter test is illustrated in note to Becker v. Ill. Cent. R. Co., 250 Ill. 40, 95 N. E. 42, in 35 L. R. A. (N. S.) 1155. The difficulty of double judgment does not arise here; the Federal Interpleader Act providing another remedy against it. The federal cases are controlling, and establish that the incomplete garnishment proceeding in Illinois has the effect of a lien, and, that full faith and credit in other states, and in the federal courts require that like effect be given it in them.

According to Texas law insurance on burned homestead property stands in its place, and is exempt from garnishment, although the homesteader may dispose of it voluntarily as he sees fit. Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742; Sorenson v. City Nat. Bank (Tex. Com. App.) 49 S.W.(2d) 718; Russell v. Hamilton (Tex. Civ. App.) 174 S. W. 705. There is no limit as to amount, unless furnished by the conscience of a court of equity. $60,000 of insurance was held exempt in Chase v. Swayne. The insurance is not really the homestead, nor the proceeds of it, for it is bought by and produced from the premiums paid for it. There is merely a judicial, or in some states a statutory, exemption of it from

seizure to permit if the insured chooses a repair of the damaged homestead. But the exemption has no force outside of Texas. Sanders had before this interpleader was filed only a chose in action against debtors domiciled in Connecticut. He had taken no step to reduce it to possession and to make it property in Texas. It still had its situs for purposes of enforcement where the person of the debtor might be found. Vogel v. New York Life Ins. Co. (C. C. A.) 55 F.(2d) 205. The debt was attached first in Illinois, where the Texas exemption from garnishment was without force. This is not a case in which a creditor domiciled in the same state with his debtor seeks to evade the laws of his own state by going into another state to attach an exempt debt. Such a fraud on its own laws by its own citizen the state of his domicile may by injunction prevent. Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538; Moton v. Hull, 77 Tex. 80, 13 S. W. 849, 8 L. R. A. 722. Here the creditor at his own domicile invokes the processes of his own state to subject property within their reach to the payment of an undenied debt, and injunction will not be granted against his doing so. Griffith v. Langsdale, 53 Ark. 71, 13 S. W. 733, 22 Am. St. Rep. 182; Person v. Williams-Echols Dry Goods Co., 113 Ark. 467, 169 S. W. 223. By its statute Illinois now protects against garnishments there the wages of nonresident laborers. Jackson & Co. v. Republic Iron & Steel Co., 141 Ill. App. 453. Without such a statute courts have by construction extended their local exemptions as laws of the forum to cover foreign laborers. Mineral Point R. Co. v. Barron, 83 Ill. 365; Wabash R. Co. v. Dougan, 142 Ill. 248, 31 N. E. 594, 34 Am. St. Rep. 74; Goodwin v. Claytor, 137 N. C. 224, 49 S. E. 173, 67 L. R. A. 209, 107 Am. St. Rep. 479. Some courts have thought the exemption of wages inhered in the contract of employment, and followed the wages wherever they were sought to be recovered, but this idea was rejected in the Sturm Case. We have seen no decision in which the effort to protect insurance on a foreign homestead has succeeded. A number of cases refuse such protection. Person v. Williams-Echols Dry Goods Co., 113 Ark. 467, 169 S. W. 223; Roche v. Rhode Island Ins. Association, 2 Ill. App. 360; American Cent. Ins. Co. v. Hettler, 46 Ill. App. 416; Sexton v. Phœnix Ins. Co., 132 N. C. 1, 43 S. E. 479. The policy of the state of Illinois as set up in the garnishee's answer is to protect as homestead only $1,000 of value. The urban homestead in Texas, Rev. St. 1925, arts. 3832, 3833, exempts beside household and kitchen furniture $5,000 of value of bare land, with an unlimited value of buildings thereon for a residence or a business or both. The homesteader here, outside of his business homestead, has sold his residence lot for $2,000, and would exempt insurance of nearly $8,000 more. It is a stipulated and understandable fact that the courts of Illinois will not aid him to exempt this insurance.

▮▮▮ We do not think the filing of the federal interpleader and the payment thereunder of the money into the District Court in Texas operated to bring it under the dominion of Texas law. The applicant for interpleader often has a choice of forum, and he cannot at his will subject the rights of the contesting claimants to one set of laws rather than another. The purpose of the interpleader statute was to give the stakeholder protection, but in nowise to change the rights of the claimants by its operation. The interpleader is a suit in equity, and equitable principles and procedure are the same throughout the federal jurisdiction. The court is to weigh the right or title of each claimant under the law of the state in which it arose, and determine which according to equity is the better. The decision should be the same whether the interpleader is filed in Illinois or in Texas. No one's rights are intended to be altered by paying the fund into the court, which as an impartial neutral is to determine them. Vogel v. New York Life Ins. Co. (C. C. A.) 55 F.(2d) 205. The garnishment in Illinois was a detention in that state of the insurance debt good there against Sanders' claim of exemption, and the fund now representing it must be held incumbered by the same lien. Full faith and credit so require. Chicago, Rock Island & P. R. Co. v. Sturm, 174 U. S. 710, 19 S. Ct. 797, 43 L. Ed. 1144; Missouri, K. & T. R. Co. v. Swartz, 53 Tex. Civ. App. 389, 115 S. W. 275. The enforcement of the lien in Illinois, though to the detriment of a Texas exemption, we have shown not to be in itself inequitable so as to be enjoined. The federal injunction for purposes of interpleader ought not to have ulterior consequences. The garnishment lien might by a modification of the federal injunction be allowed to be perfected by a final judgment in Illinois; the fund being held to await the decision. See City Nat. Bank v. Lummus Cotton Gin Sales Co. (Tex. Civ. App.) 297 S. W. 563; Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Hill v. Harding, 130 U. S. 699, 9 S. Ct. 725, 32 L. Ed. 1083. But since by stipulation judgment there is certain, it can be adequately administered at once. We treat the

burned property as unabandoned homestead, though there is a contest of the fact. Sanders cannot repair his damaged home with this money, for he has sold it. Creditors are favored in the court of conscience. There is no inequity in requiring the payment of a just debt. Compare Cole v. Young, 24 Kan. 435, by Brewer, J. The foreign garnishment was put ahead of the exemption right in the state which created it in the Sturm Case. We think this fund should be applied first to the extinguishment of the judgment rendered against Sanders in the garnishment proceeding, and the remainder, if any, paid over to him. The cause is reversed, with direction to enter a decree accordingly.

Reversed and rendered.

HUTCHESON, Circuit Judge (dissenting).

The conclusion of the majority is in effect that an inchoate garnishment proceeding by publication, begun in Illinois, limits the general jurisdiction of a federal court in Texas in an interpleader suit to hear, determine, and decree, by compelling it to deny to the head of a Texas family, the homestead exemption which Texas laws guarantee. I feel strongly that the decision, in requiring a Texas court to deprive a Texas family of its homestead exemption to pay a debt incurred and payable in Texas, is harsh and unjust, subversive of the public policy of Texas and its established social order. Because I do, and because I think it plain that the opinion bases and proceeds on premises and reasoning wholly unsound, I am constrained not only to dissent, but to give my reasons for doing so.

On the former appeal, National Fire Ins. Co. v. Sanders, 38 F.(2d) 212, we held that the garnishment proceeding had not vested jurisdiction of any res in Illinois, and that "any judgment to be rendered against the garnishee there would be a personal judgment to be satisfied out of personal property and not out of any particular fund or segregated property." On this appeal the majority takes just the opposite view. They find that there was a res impounded and a lien fixed thereon. On the former appeal we held: "The District Court has jurisdiction to determine which of the claimants is entitled to the fund deposited in court, and to award it accordingly." On this appeal the decision of the court is in effect that the District Court had not full jurisdiction of the cause to inquire into the merits of the claim that the proceeds of the policies were exempt and determine accordingly; that the jurisdiction the court had was merely a ministerial and per-

functory one to render the judgment in the interpleader suit which the Illinois court would have rendered if the garnishment had proceeded to judgment there; that, in short, the only effect of the interpleader suit and the injunction against the Illinois proceeding was in substance to transfer it to Texas to be consummated there under the control of the stipulation of the parties that in Illinois the exemption would not be allowed.

The views of the majority, I think, run counter, not only to the essential right and justice of this cause, but to the settled rules of law governing matters of this kind. First, as to the justice of the exemption claim.

I oppose, to the view expressed in the majority opinion that creditors "are favored in the court of conscience" as against those holding exemptions, the settled law that a court of equity, having jurisdiction of the parties, will restrain a creditor from resorting to the courts of another state in order to defeat an exemption allowed by the laws of the state where the debt is created and is payable, as well as when suit is brought to defeat any other policy of the state, and that the full faith and credit clause does not prevent its doing so. Moton v. Hull, 77 Tex. 80, 13 S. W. 849, 8 L. R. A. 722; Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538; Wilser v. Wilser, 132 Minn. 167, 156 N. W. 271; Kansas City Rys. Co. v. McCardle, 288 Mo. 354, 232 S. W. 464, 468; Weaver v. Alabama Great Southern R. Co., 200 Ala. 432, 76 So. 364, 365. The notes executed by Sanders were Texas obligations. They were signed in Texas; they were payable there. They were captioned "State of Texas, DeKalb, Texas, May 1, 1926"; they provided, "This note shall be payable at Stockyards National Bank, Fort Worth, Tarrant County, Texas." There is no doubt that, if a Texas court could have obtained jurisdiction of Armour, it would have enjoined his prosecution of the suit in Illinois.

In the light of these authorities, to say, as the majority does, that a court of conscience sitting in Texas has jurisdiction of a creditor who has undertaken shrewdly to circumvent its exemption laws so as to compel a Texas debtor to pay a Texas obligation out of exempted proceeds of insurance policies on his home, is, in my opinion, to incorrectly state the law.

To the view implicit in the opinion, that the Texas homestead exemption laws are too liberal, and because too liberal the federal courts justly deny them effect, I oppose not only the observation that it is for Texas alone

to determine the level of domestic peace and security which the genius of the state requires and to fix its exemptions accordingly, but the observation that "it has always been the policy of Congress, both in general legislation and in bankrupt acts, to recognize and give effect to the state exemption laws." Holden v. Stratton, 198 U. S. 214, 25 S. Ct. 656, 659, 49 L. Ed. 1018. In that case it was said: "This was cogently pointed out by Circuit Judge Caldwell, in delivering the opinion in Steele v. Buel, where he said (44 C. C. A. 287, 104 F. 968, 972): 'From the organization of the Federal courts under the judiciary act of 1789, the law has been that creditors suing in these courts could not subject to execution property of their debtor exempt to him by the law of the state.' * * * The same rule has obtained under the bankrupt acts, which have sometimes increased the exemptions, * * * but have never lessened or diminished them. An intention on the part of Congress to violate or abolish this wise and uniform rule, observed from the creation of our Federal system, should be made to appear by clear and unmistakable language."

To the view announced by the majority that exemptions are matters of local law, having in themselves no extraterritorial effect, and that they will not ordinarily be enforced in states other than that of their creation, I oppose the settled policy of substantially all the states to insure, by statute and decision, the exemption from seizure for debt of the home and the proceeds of insurance policies on it (Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742; Ketcham v. Ketcham, 269 Ill. 584, 109 N. E. 1025) and the modern view that comity requires that exemptions allowed in a state be not defeated by suits brought in another state to avoid them (Reames v. Morrow, 193 Ill. App. 155; Singer Mfg. Co. v. Fleming, 39 Neb. 679, 58 N. W. 226, 23 L. R. A. 210, 42 Am. St. Rep. 613; Strawn Mercantile Co. v. First National Bank [Tex. Civ. App.] 279 S. W. 473, 474; Jackson & Co. v. Republic Iron & Steel Co., 141 Ill. App. 453; Baltimore & Ohio S. W. R. R. Co. v. McDonald, 112 Ill. App. 391).

The majority holding to the confused notions of debt situs advanced in Chicago, Rock Island & P. R. Co. v. Sturm, 174 U. S. 710, 19 S. Ct. 797, 43 L. Ed. 1144; King v. Cross, 175 U. S. 396, 20 S. Ct. 131, 44 L. Ed. 211, as determining jurisdiction in garnishments, exploded in Harris v. Balk, 198 U. S. 215, 25 S. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084, treat garnishment proceedings as now in personam, now in rem, and contrary to the universally recognized rule that priority of judgment rather than priority of garnishment controls seeks to rest upon the universally denied theory that the garnishment impounded a res in Illinois its conclusion that a lien was fixed there.

Questions of justice and comity aside, however, I think that a correct understanding of the nature and effect of garnishment proceedings, the nature and effect of a federal interpleader suit, and the law governing federal courts sitting in a state as to the exemptions allowed in that state, make it plain that the District Judge was right, and that the reversal of his judgment was wrong. And, first, as to the nature of a proceeding in garnishment.

Garnishment proceedings, though they undoubtedly derive generally from the custom of London (Chicago, R. I. & P. R. Co. v. Sturm, 174 U. S. 710, 19 S. Ct. 797, 43 L. Ed. 1144), are in the United States purely statutory. In each state their nature and results are those which the courts of that state conceive that the statutes impart to them. Beale, in his very interesting article, "The Exercise of Jurisdiction in Rem to Compel Payment of Debts," 27 H. L. R. 107, shows how far in the United States garnishment proceedings have departed from the custom of London, and how, though in the beginning treated as based on the notion that the situs of the debt fixed the place of suit, with varying views as to where that situs was (Chicago, R. I. & P. R. Co. v. Sturm, 174 U. S. 710, 19 S. Ct. 797, 43 L. Ed. 1144; King v. Cross, 175 U. S. 396, 20 S. Ct. 131, 44 L. Ed. 211), they are now, under the influence of Harris v. Balk, 198 U. S. 215, 25 S. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084, and the general current of authority, regarded as suits in personam, the jurisdiction to maintain which is based, not at all on theories of situs, but on the power of the court to obtain personal jurisdiction over the garnishee. He shows that the notion that garnishment is an ordinary action in personam, jurisdiction to maintain which exists wherever the garnishee can be served, has entirely superseded the original notion of garnishment as a proceeding based on jurisdiction in rem over a thing. Minor, in his Conflict of Laws, also interestingly discusses these questions of situs and jurisdiction, and of the nature of a garnishment action. He concludes, page 290, citing Mooney v. Mfg. Co. (C. C. A.) 72 F. 32, that a garnishment is but a proceeding in personam, while in the courts of Illinois the same rule is definitely laid down. They hold that,

being a personal action, not the filing of the suit, but the obtaining of final judgment, fixes the rights of the parties. McElwee v. Wilce, 80 Ill. App. 338; Lancashire Ins. Co. v. Corbetts, 165 Ill. 592, 46 N. E. 631, 36 L. R. A. 640, 56 Am. St. Rep. 275; Becker v. Ill. Central R. Co., 250 Ill. 40, 95 N. E. 42, 35 L. R. A. (N. S.) 1154. In some courts a garnishment is spoken of as a proceeding quasi in rem. Coign v. Plaines, 90 Conn. 293, 97 A. 337. In some as a species of attachment. In others, as a mere personal action at the end of which there is in effect a forced assignment from the original creditor to the garnishing creditor, an action creating no specific lien, but holding the garnishee to a personal liability, depending upon his liability to the principal defendant. Sargent County v. State, 47 N. D. 561, 182 N. W. 270. In some, as a proceeding creating no lien, but merely a contingent personal liability to respond to any judgment after it is recovered. Murphy v. Bjelik, 87 Or. 329, 169 P. 520, 521, 170 P. 723; Rodgers v. Oliver, 200 Iowa, 869, 205 N. W. 513. In some states it is likened to an equitable trustee proceeding. Weinberg v. Brother, 263 Mass. 61, 160 N. E. 403. In others, it is said that a proceeding in garnishment is merely a proceeding for the purpose of effecting a compulsory assignment of the claim by process of law. Seventy-First St. & Broadway Corp. v. Thorne, 157 A. 851, 10 N. J. Misc. 99.

These different expressions have no absolute, no general, significance. They represent the attempt of each court to set down in its own terms the effect of a garnishment action which is to warn the garnishee not to pay the debt to the principal creditor, unless and until directed by judgment to do so. They establish that, regardless of the pendency of trustee or garnishment proceedings, the principal defendant may at any time commence and prosecute his action, and that no proceedings against the garnishee short of judgment, and no payment made by him before judgment, will protect or release him from the claim of the principal creditor. McIntosh v. Bramson, 130 Me. 420, 157 A. 234. They establish that, though the principal defendant may not, after his debtor has been garnished, assign his claim or do any other thing to defeat the garnishment, the proceeding is still only a personal action; it fixes no lien; it protects the garnishee against liability only after judgment; and, until it has gone to judgment, it is ineffective as against the rightful claims of the principal creditor that the fund is not garnishable be-

cause of the exemption when asserted in a court of competent jurisdiction. They establish that the pendency of a trustee or garnishment proceeding in another jurisdiction is not a ground in bar of local action; that such proceedings do not bar until they come to judgment, and that they do not even operate to stay, except in the interest of the garnished defendant to save him from double liability. Solomon v. Continental Ins. Co., 261 Mass. 360, 158 N. E. 774.

Under these decisions, no lien was fixed by the inchoate proceeding in Illinois. Nothing occurred there except the starting of a personal suit the same as that which Sanders started by filing his claim in the interpleader suit. Under these decisions, since the time of obtaining judgment in, and not the time of filing, personal suits, fixes the rights of the parties, the matter stood as between Armour and Sanders in the interpleader suit after they had claimed in it, exactly as it would have stood had Sanders filed his suit in Texas, Armour his in Illinois, and both had been enjoined.

It remains to inquire what kind of jurisdiction the District Court exercises in a federal interpleader suit; that is, whether it is a full jurisdiction of the parties and the cause, or a limited one, as the majority assert it to be, and, if a full jurisdiction, what law should be applied. First, as to the nature of an interpleader suit.

"Interpleader is a type of judicial proceeding admirably fitted to achieve justice in complicated controversies. In order to give full relief to the applicant who seeks interpleader, the court must have the power to enjoin the claimants from prosecuting their claims outside of the interpleader proceedings, for otherwise its decree would not terminate the controversy. Chafee, Interstate Interpleader. Y. L. J. Vol. 33."

Such a suit is not a suit in rem, it is an equitable proceeding in the nature of a bill or peace, for the purpose of avoiding multiplicity of suits, and the possibility of double liability. It enables one having no interest except to protect himself from double liability, against whom harassing and vexatious litigations are, or are about to be brought, to bring into one forum all opposing claimants and compel them to settle there the question which is entitled to the payment each demands. Because, like garnishment, it is a personal suit, and not a suit in rem, personal jurisdiction over the claimants is essential. New York Life Ins. Co. v. Dunlevy, 241 U. S.

518, 36 S. Ct. 613, 60 L. Ed. 1140. That jurisdiction existing, however, the court in which the interpleader is filed has full authority to hear and dispose of the claim in accordance with the applicable law. It is perfectly clear, in fact, it is conceded by the majority, that federal courts sitting in a state ordinarily apply the exemption laws of the state (Holden v. Stratton, supra), and that ordinarily, if "the decree would have been right in * * * the State of Texas, it was right in a District Court of the United States sitting in the same State." Union Trust Co. v. Grosman, 245 U. S. 412, 38 S. Ct. 147, 148, 62 L. Ed. 368; Pritchard v. Norton, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104.

But it is said by the majority that in Chicago, R. I. & P. R. Co. v. Sturm, 174 U. S. 710, 19 S. Ct. 797, 43 L. Ed. 1144, it was held that a garnishment proceeding created a lien, and that courts in the state of the exemption must give effect to the lien so created.

With all due deference, the Sturm Case decided no such thing. It was a suit in which a defendant, against whom judgment in garnishment had gone in Iowa, sought to stay the suit of the creditor of the principal defendant in Kansas until the garnishment proceeding could be finally determined. Proceeding in that case upon the erroneous view that the garnishment in Iowa had seized a debt having a situs there, because the garnishee lived there, it did hold that, in order to save the garnishee double liability, he was entitled to a stay of the suit of the principal defendant for the debt after judgment had gone in the garnishment suit. It did not hold, the question was not before it, that a federal court in the state of the exemption having jurisdiction of both the principal creditor and the garnishing creditor in an interpleader suit filed by the garnishee would be compelled to recognize an inchoate garnishment proceeding in another state, brought there on a Texas obligation to defeat Texas exemption laws, as superior to the exemptions granted by the laws of Texas. It did not hold that a federal court having complete personal jurisdiction of two claimants, neither of whom had obtained a judgment, would be bound by the full faith and credit clause, to render a judgment on a Texas contract in favor of one of them, who, contrary to the fundamental public policy of the state of Texas, had resorted to another state to defeat its exemption laws.

What the majority has done is to give to the Sturm Case the effect, not only of deciding questions which were not before it, but of laying down a rule which it did not even advert to, a rule contrary to established law, that the full faith and credit clause binds the courts of a state to give effect to inchoate public acts and judicial proceedings of another state, contrary to its established fundamental policies. The majority, in reversing and rendering this cause, has laid down the rule that the bringing of a garnishment suit compels the federal court in another state in which a bill of interpleader is filed to deny exemptions allowed by the state in which it sits, contrary to the fundamental policy of that state. The full faith and credit clause of the Constitution does not require such action. Courts have never held that it did. On the contrary, they have held, without varying, that courts of a state do not have to enforce public acts or judicial proceedings, though final in their nature, which are contrary to the public policy of that state, and the jurisdiction has always been recognized to enjoin the prosecution of such suits or actions to obtain the fruits of them. See cases supra, and Rose's notes to Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538.

The true rule is that, though the full faith and credit clause does generally require recognition of the public acts and judicial proceedings of another state, it does not require the courts of one state to give effect to personal actions looking to the establishment of a right or charge while those actions are still inchoate. Becker v. Ill. Central R. Co., supra; Lancashire Ins. Co. v. Corbetts, supra. It does not require the courts of one state to exercise their jurisdiction to enforce the public acts or judicial proceedings of another, when those acts or proceedings, if given effect, would result in subverting the public policy of the forum. Bradford Elec. Light Co. v. Clapper, 286 U. S. 160, 52 S. Ct. 571, 76 L. Ed. 1026.

Because, then, Armour's proceeding in Illinois was a mere personal action to obtain a general judgment for moneys, and was not a suit to impound a res or fix a lien or charge upon it, and because that suit had not resulted in a personal judgment enforceable personally, either against Sanders or the garnishee, and because, if those proceedings be considered to have given Armour any kind of lien or charge, it would be one available only against persons claiming by subsequent acts under Sanders, not one available in a Texas court to defeat Sanders' exemption claim in subversion of the established policy of that state, I think it plain that, when it filed its claim in the interpleader suit, that claim took rank behind the claim of Sanders.

On Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.