GEO. H. JETT DRILLING CO.

v.

E. H. TIBBITS, d/b/a Tibbits Drilling Company, Lamb Rental Tools, Inc., National Supply Division, Armco Steel Corporation.

Houston Oil Field Material Company, Inc., Reed Roller Bit Company, United States of America, E. D. Squires et al., Gordon C. Freeman et al., Intervenors.

Civ. A. No. 8636.

United States District Court
W. D. Louisiana,
Monroe Division.

Sept. 29, 1964.

584

John B. Hussey, Jr., Hussey & Moore, Shreveport, La., for plaintiff.

Warren D. Rush, Bean & Rush, Lafayette, La., Sidney B. Galloway, Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendants.

Fred Fudickar, Jr., Oliver, Digby & Fudickar, Monroe, La., Lawrence L. May, Jr., May & Woodley, Shreveport, La., Patrick W. Looney, Bodenheimer, Looney & Jones, Shreveport, La., Edward L. Shaheen, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for intervenors.

BEN C. DAWKINS, Jr., Chief Judge.

This is an interpleader action in which Geo. H. Jett Drilling Company (Jett) deposited into the registry of this Court the proceeds of a contract to drill an oil well for E. H. Tibbits, d/b/a Tibbits Drilling Company (Tibbits).

Impleaded were creditors of Tibbits who assert against the proceeds of the contract privileges and liens far exceeding the amount deposited by Jett. Other creditors have intervened claiming their right to liens which entitle them to priority of payment.

In ruling upon the merits of this case (230 F.Supp. 58 [W.D.La.1964]), we fully set forth the sequence of events and held as to our views in proper distribution of the funds in the registry of the Court. Three of the creditors who were recognized as unsecured creditors only have filed motions for a new trial in order to gain recognition as secured creditors.

National Supply Division, Armco Steel Corporation (Armco), filed suit against Tibbits in the State District Court November 30, 1961, and obtained an attachment of the funds in question which were in the hands of Jett. Jett filed this interpleader January 9, 1962, and January 10, 1962, this Court enjoined Armco and the other named defendants from instituting or prosecuting any other action in State or federal courts pertaining to the funds deposited in the registry of this Court. Armco was served with this injunction January 15, 1962, and on the following day Armco's attorney, not yet having received notice of service of the injunction, obtained in the State Court a judgment against Tibbits which maintained the attachment against Jett. Armco contends that by virtue of the

attachment effected November 30, 1961, it obtained a privilege on the attached funds.

Armco renews its contention that under Louisiana law a privilege arises in favor of an attaching creditor from the date of the attachment, even when the attachment is not subsequently perfected by judgment. However, as pointed out in our original opinion, a Louisiana attachment creates a privilege which relates back to the date of the attachment, but only when the attachment is followed by a *judgment on the creditor's main demand* which maintains the attachment. LSA–Code of Civil Procedure Art. 3511 (1960); Board of Sup'rs of Louisiana State University v. Hart, 210 La. 78, 26 So.2d 361, 174 A.L.R. 1366 (1946); General Motors Acceptance Corp. v. Jordan, 65 So.2d 627 (La.App. 1st Cir. 1953); In re Bryce Cash Store, 12 La.App. 365, 124 So. 544 (La.App. 2d Cir. 1929).

No judgment was rendered in favor of Armco against Tibbits maintaining the attachment against the funds in the hands of Jett until after the issuance of the injunction by this Court. No effect can be given to that judgment since it was in violation of the injunction.

Armco contends that in Armour Fertilizer Works v. Sanders, 63 F.2d 902 (5 Cir. 1933) and Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206 (1934) both the Fifth Circuit and the United States Supreme Court recognized the validity of an Illinois attachment in an interpleader action filed in Texas, although the Illinois attachment was not perfected by judgment. However, a close examination of those cases reveals that in that situation a judgment in the Illinois suit was awarded to the creditor against the principal debtor before the Texas interpleader action was filed.[1] In that *judgment on the main demand* the attachment was sustained by the Illinois court. All that remained in the Illinois proceeding was a trial on the answers of the garnishee in

order to render judgment ordering the garnishee to pay the attached funds to the creditor.

This case differs from Armour in that at the time this interpleader action was filed no judgment had been rendered by the Louisiana Court *on the main demand* maintaining the attachment. Consequently, the privilege had not been perfected at the time this interpleader action was filed, and Armco must be considered as an unsecured creditor.

Armco correctly points out that the Fifth Circuit in Armour Fertilizer Works v. Sanders, supra, stated:

" * * * The purpose of the interpleader statute was to give the stakeholder protection, but in nowise to change the rights of the claimants by its operation. * * * No one's rights are intended to be altered by paying the fund into the court, which as an impartial neutral is to determine them. * * * The federal injunction for purposes of interpleader ought not to have ulterior consequences. * * * " (63 F.2d at 906)

However, we do not agree that Jett's filing of this interpelader action changed Armco's rights by denying Armco a privilege to which it was entitled. When Jett filed this suit Armco had acquired no privilege. Therefore, Armco's rights were not changed by the interpleader.

The laborers, Squires, Freeman, et als, contend they are entitled to a lien under Section 372 of the Mississippi Code. As noted in our original opinion, that section requires that the owner be given written notice in which the benefits of Section 372 are claimed.

The laborers claim that sufficient notice was given when Tibbits mailed checks payable to the laborers for their wages to Jett for approval. Section 372 appears to require that notice be given by the laborer or materialman claiming he is entitled to payment. Even if the

1. See 63 F.2d at 903; 292 U.S. at 197, 54 S.Ct. 677.

mailing of the checks to Jett be considered notice in writing by the laborers, there is nothing to show that they made any claim to the benefits of Section 372 therein. In the original opinion we observed that the letter written by some of the laborers on March 6, 1962, came too late. Since the provisions of the Mississippi statute were not complied with, the laborers are entitled to no privilege on the funds deposited.

Likewise, Reed Roller Bit Company is entitled to no privilege because of its failure to give written notice claiming the benefits of Section 372. Reed claims this was effected by the filing of claims before the funds were paid out. As in the case of the laborers, that notice came too late to attach to the money in the hands of the owner as provided by Section 372.

For the reasons assigned, the motions for new trial are denied.